Marsh v. Smith.

---

### John C. Marsh v. Boyd Smith.

One who stands by in silence, while his own property is sold, and suffers another to become the purchaser, will be estopped from disputing a title so acquired.

Appeal from the District Court of St. Mary, *Wilson*, J.

*Maskell*, *T. H. Lewis*, and *W. B. Lewis*, for the appellant.

*J. E. Morse* and *Voorhies*, for the defendant.

*A. Porter*, for the parties cited in warranty.

Bullard, J. This is a petitory action in which the plaintiff claims title to a tract of land in the parish of St. Mary, at a place called *Les Côtes*, or *Isles de la Petite Anse*, surrounding other tracts of land belonging to different persons, and divided into several small tracts so as to contain together about five hundred and

fifty-two acres, granted originally to Jacques Fontennette and Alex·andre Bienvenu De Vince, and confirmed to the grantees by the United States. He derives his title to this tract of land through several mesne conveyances from the grantees, alleging that Fontennette, on the 3d of April, 1810, sold his share to John and David Hayse, who, in 1814, sold to Jesse McCall, and that the latter afterwards transferred the same to Stone and himself (Marsh,) and that he afterwards acquired the title of his deceased partner. That in the meantime, Stone and Marsh acquired the share of Alexandre Bienvenu DeVince by a public sale provoked by his widow and heirs, in 1825. He complains, that Boyd Smith has entered upon a large part of the tract to his great damage : he prays that he may be quieted in his title, and that the defendant may be forever prohibited from setting up any right to the said land, and for $1000 damages.

The defendant in his answer, denies the allegations in the petition. He avers that he is the owner of the tract of land in the *Island de la Petite Anse,* having a front of fourteen *arpens* on the left bank of the bayou Petite Anse, bounded southerly by land formerly owned by Eliza Hayse, and northerly by the upper line of said tract. That he purchased by the advice and with the assistance of the plaintiff himself, being an entire stranger in the country, and that the plaintiff, when he advised him to make the purchase, was owner of the same titles under which he now pretends to claim the land, but concealed their existence from the defendant. That in consequence of such fraudulent conduct, the plaintiff is precluded from setting up any title or claim to said land, or, if said title prevails, is bound to pay all the damage which the defendant will have sustained by reason of said frauds, which, in the event of the plaintiff's succeeding, will amount to $10,000, which he claims of the plaintiff. The defendant further pleads prescription. He then details the chain of titles from Fontennette, and calls the heirs of Joshua Baker, his immediate vendors in warranty. The warrantors thus cited, join with the original defendant, and set up the same defence.

The plaintiff has appealed from a judgment against him.

In support of his title, the plaintiff gave in evidence the certificate of the Land Commissioners, B. No. 61, recommending for

confirmation the claim of Jacques Fontenuette and Alexandre Bienvenu, for all the vacant land on the island of Petite Anse, from which it appears, that the notice of the claim was accompanied by the petition of the claimants for said land, dated October 8, 1796 ; and that, on the 24th of August, 1797, the Commandant ordered the Surveyor of the Port to lay out the lands of the proprietors of said island, and ascertain what might remain vacant. It appears from said certificate, that a survey was made in 1810, at the request of the Board of Commissioners, by Thomas Orme, a Deputy Surveyor. It further appears, that the claim thus recommended, was confirmed by act of Congress in 1816. The plaintiff also gave in evidence a copy of Orme's plat of survey, which shows on the north $85\frac{1}{2}$ acres, on the east 217 acres, and on the south 165 acres, in all $467\frac{1}{2}$, as embraced in the inchoate grant to Fontennette and De Vince, and confirmed by the act of Congress.

The plaintiff next gave in evidence a sale, dated April 3, 1810, by Fontennette, one of the grantees, to John and David Hayse, of a tract of land, described as " *une terre située aux côtes à coirin au bout des concessions de quarante arpens sur le bayou de La Petite Anse, contenant toute la terre qui se trouve incluse dans les titres de concession qui ont été accordés par le gouvernment Espagnol au dit sieur vendeur dans le dit lieu.*" J. and D. Hayse, on the 7th March, 1814, sell the same land, by a similar description in English, to Jesse McCall, who, in 1818, conveyed to Stone and Marsh, several tracts of land on the island ; having previously, in 1814, sold one tract of fourteen *arpens* front, to Joshua Baker. It is, therefore, important to analyze minutely these two conveyances.

The sale from McCall to Stone and Marsh embraces three tracts upon the Island : *First*, Twenty *arpens* front by the ordinary depth, bounded on the north by Elizabeth Hayse, on the east by lands claimed by Madame Bienvenu and J. Fontennette, on the south by the sea marsh, and a tract of $194\frac{97}{}$ *arpens*, laid off on the plat of said island, to J. Fontennette, and at present claimed by McCall, and on the west by the sea marsh. The second tract comprises the $194\frac{79}{100}$ *arpens*, specified as forming a part of the boundary on the south side of the first tract, ex-

cepting from the same 150 *arpens*, reserved by the said Mc-Call to be taken from the west end. *The third* tract, comprehending the extent of said McCall's claim in the parcel of land specified as *forming the eastern boundary of the first tract*, not interfering with the 150 *arpens* reserved. The *second tract* intending to comprise all that tract heretofore purchased by the said McCall, of David and John Hayse, and *which lies on the east side of the first tract*, and adjoining the second tract, referring for a more particular description to the plat of said island, made by Thomas Orme in 1810. The 150 *arpens* reserved by Mc Call were afterwards purchased by Stone and Marsh.

This conveyance does not appear to us to embrace the fraction on the north end of the island, of $85\frac{1}{2}$ acres now in controversy. According to Orme's survey, that tract was entirely separated from the two others, which together were confirmed to Fontennette and DeVince by the act of Congress, on the recommendation of the commissioners. It is true, the vendor says, that he sel's all that tract purchased by him of David and John Hayse; but he adds, *and which lies on the east side of the first tract*, thereby qualifying the expression so as not to embrace all purchased by him *on the north end of the island*, which embraces the *locus in quo*. We are confirmed in this construction of the deed by the fact, that McCall had already, in 1814, sold to J. Baker, under whom the defendant holds, the same land extending *fourteen arpens* in front, *from the land of Elizabeth Hayse to the sea marsh*, which description embraces equally the *locus in quo*. This sale purports to be of fourteen *arpens*, which Fontennette had sold to McCall by a separate deed, and is apparently grounded upon a distinct grant to Fontennette. No such grant is shown in the record; and it is evident, that the ten *arpens* front, bounded by Elizabeth Hayse, and confirmed to Lightner, cover the same land except the land now in controversy. But although Fontennette had no such title to the fourteen *arpens*, the same having been probably annulled by the Baron Carondelet in 1796, as appears by his official decree in the record; yet if he had any right or title to any part of the tract thus sold, there is no doubt it passed to McCall, his vendee. Now we have seen, that jointly with De Vince he had a grant in the small fractional tract, on the

north of the island, extending from Lightner's tract of *ten arpens* to the sea marsh, and it is precisely that land which he sold to Baker. The latter, therefore, acquired from McCall by that sale, all the title of his vendor, to wit, one undivided half as joint owner with De Vince.

It results from this view of the case, which we have adopted after minute and patient examination, that the question of title between the parties depends on the fact, whether Fontennette, the vendor of McCall, had a separate and distinct title to the tract purchased afterwards by Joshua Baker. We have said, that the original grant to Fontennette was probably annulled by Carondelet. It is not necessary to decide positively that such was the case ; for no title is exhibited to Fontennette except the one jointly with De Vince, which is the only title out of the domain which has been recognized by the land department, and indeed no other evidence of a primitive title is shown. We are, therefore, authorized to say, that none ever existed in that part of the island, except that of Lovelace, which Carondelet declares to remain in force, and which was confirmed by the Commissioners, and covers all the pretended grant of Fontennette, except four *arpens* front ; and those four *arpens* are the land now in controversy.

It would seem, therefore, according to the written titles, that one-half of the tract belonged to the plaintiff previously to the purchase by the defendant of the heirs of Baker, and he would be entitled to recover, were it not for the peculiar circumstances under which the defendant made his purchase. But it is contended, that Marsh is estopped from setting up any title adverse to that acquired by Smith, because he advised Smith to make the purchase, while he was owner of the same title under which he now sues, the existence of which he concealed from Smith. The evidence in support of this allegation is, that before Smith came to the country, Marsh had been requested to purchase a tract for him. That his brother arrived in 1829, and introduced himself to Marsh, and inquired of him whether he had made a purchase for his brother, the defendant. He answered, that he had not bought, but had a tract in view, and requested defendant's brother to go and look at it. The latter replied, that he was no judge of land, and it would be

of no use. Marsh stated, that the land was good sugar land, and that he hoped the defendant would buy it, as it was near his plantation. The defendant afterwards came on and made the purchase. Another witness, who is unimpeached, testifies, that Smith came to the State in 1829, and was as he understood from the plaintiff, his particular friend. That he afterwards purchased the tract of land in question of the heirs of Joshua Baker, and was particularly advised to do so by the plaintiff. This was stated by the plaintiff to the witness both before, and after the purchase. It cannot be supposed, that the plaintiff was ignorant of his own title, and if this case presented only a conflict of boundaries, it might be supposed that the plaintiff was under a mistake as to the boundary of his own land. But such is not the case. The small tract of land in dispute, lies in the corner of the small island, and is the only spot in dispute—all the rest of the island being covered by undisputed titles. It is, however, contended by the counsel of the plaintiff, that his client only recommended to Smith to purchase Baker's tract of ten *arpens* front, by forty deep, and not a front of fourteen *arpens*. But we think the advice of Marsh must be taken, according to the evidence, to refer to the title of Baker such as it appeared on the public records, and that is, a sale from Jesse McCall in 1814, of fourteen *arpens* front, bounded on the south by land of Elizabeth Hayse, and north by the sea marsh. The record does not show that Baker had a tract of ten *arpens*, independently of that purchased of McCall.

The principle invoked by the defendant's counsel is one well settled, that if a man stands by, and is silent while his own property is sold, and suffers another to become the purchaser, he is estopped from disputing a title thus acquired. The rule of law is well expressed by Lord Denman in the case of *Pickard* v. *Sears*, (6 Adol. & Ellis, 469,) to wit, that where one by his words or conduct, wilfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief, so as to alter his own previous position, the former is concluded from averring against the latter a different state of things as existing at the same time."

There are cases, says Judge Story, in his Treatise on Equity, in which a man may innocently be silent; " but in other cases

a man is bound to speak out; and his very silence becomes as expressive as if he had openly consented to what was said or done and had become a party to the transaction. Thus, if a man, having a title to an estate, which is offered for sale and knowing his title, stands by and encourages the sale, or does not forbid it, and thereby another person is induced to purchase the estate under the supposition that the title is good, the former so standing by, and being silent will be bound by the sale; and neither he, nor his privies will be at liberty to dispute the validity of the purchase." 1 Story on Equity, 375, § 385. 3 Robinson, 332. 1 John. Ch. Rep. 354.

We cannot but conclude that the present case comes within the principle thus laid down, and especially the great principle of equity, that where one of two innocent persons must suffer, he shall suffer, who by his own acts occasioned the confidence and the loss; even supposing that Marsh was not fully apprised of his own title at the time he advised the purchase by Smith, it was a gross negligence on his part, which evidently misled the defendant.

*Judgment affirmed.*

In the cases of *James D. Denegre* v. *J. F. McCarthy*, from the Parish Court of New Orleans; and of *Edward C. Mielke* v. *Theophilus Freeman*, and *The Merchants Insurance Company of New Orleans* v. *Theophilus Freeman*, from the Commercial Court of New Orleans, the judgments of the lower courts were affirmed on appeal in New Orleans, with damages, during the period embraced by this volume.