The opinion of the court was delivered by
Nicholls, C. J.
The plaintiff alleges himself to be the owner of an undivided one-ninth interest in certain real estate in the Parish of St. Mary, described in his petition, which he avers he acquired in August, 1898, through an exchange of property which he made with J. O. Sigur, the owner thereof. That J. O. Sigur acquired same by inheritance from his grandmother, Mrs. Gracieuse Comen, wife of Edward Sigur, who survived her husband; but who died in the year 1894, she dying intestate and being an owner of an undivided one-third interest in the said above described property at her death, and said succession being accepted by her heirs; the said heirs being Mrs. Gracieuse Sigur, wife of Charles E. Noveret; J. O. Sigur, inheriting the interest that would have gone to his father, Hermogene Sigur, deceased, a son of the said Mrs. Gracieuse Comen, and the heirs of Mrs. Gallery, her daughter.
*1795 That the said Mrs. Graeieuse Sigur, nee Oornen, acquired an undivided one-half interest in the said above described property by being the wife of Edward Sigur, who acquired said property during the married life of himself and his said wife, and which was, at his death in 1884, community property between him and his wife, she accepting at his death the community of acquets aSnd gains existing then, she after-wards disposing of a portion of said property, leaving her an undivided one-third interest therein.
That Arthur A. Bonvillam, a resident of the Parish of St. Mary, is in possession of the whole of said above described property, including the interest of petitioner.
That when he acquired said interest in said property, he also acquired the rents and revenues due thereon; that the rental value of the entire property is well worth the sum of four thousand, five hundred dollars per annum, and petitioner is entitled to one-ninth thereof, being five hundred dollars. That Bonvillain has been in possession of and has derived a revenue from said property since the year 1895, and there is due petitioner the sum of five hundred dollars for the use of said property for each of the years, 1895, 1896 and 1899, and the same amount for each additional year until the final termination of this suit, with five per cent, interest thereon from judicial demand.
The prayer of the petition was to be decreed the owner of the property of which plaintiff alleged himself to be the owner, and for judgment for the sum of twenty-five hundred dollars additional for each year until the final termination of the suit, with legal interest from judicial demand.
Defendant, after pleading the general issue, further answered that he denied that the plaintiff ever acquired any right, title or interest in the property described in his petition by reason of the transfer set up in his petition; that the act was a simulation resorted to for the purpose of presenting pretensions in the name of a third person, which the transferer could not advance legally in his own. He denied that at the time of the act of transfer to plaintiff, his transferor had any right, title or interest in the property.
He averred that he, respondent, was the owner of an undivided half of the “Home Plantation,” described in plaintiff’s petition; that he acquired the same for the price (which he had paid) of nineteen *1796 thousand dollars, from Mrs. Gracieuse Noveret, wife of C. E. Noveret, by notarial act of May 14th, 1894.
That on the same day, by notarial act before the same notary, his vendor (Mrs. Noveret), in consideration of the sum of twelve thousand, eight hundred and twelve 50-100 dollars, cash, paid by her at that time, acquired from L. E. Gallery, Jos. E. Gallery, Ohas. H. Gallery, Jos. A. Gallery and Mrs. Bertha R. Minvielle, wife of Dr. George P. Minvielle, all these being the children of Mrs. Olara Sigur, wife of Gustave Gallery, also an heir of Edouard Sigur and of his widow, the undivided third of the said property.
That on the same day, by authentic act passed before said notary, his vendor, Mrs. Gracieuse Noveret, who is the mother of his first wife, Mrs. Elmire Noveret, donated], by authentic act to defendant’s said first wife, the undivided half of said property; that said donation was made entirely subject to collation; that said donee has since died, leaving tjhree minor children, issue of her marriage with defendant; that the value of said donated property was, in said act of donation, fixed at the sum of nineteen thousand dollars, and the obligation to collate was likewise fixed at that sum; that said donor, Mrs'. Gracieuse Noveret, had another child, Ooralie, these two daughters being the sole issue of her marriage with Charles E. Noveret, (who authorized her in the making of said sale, and said donation, but who has since died), and that said Coralie Noveret is now the second wife of defendant.
And he averred that said purchase of said one-third of said plantation, by Mrs. Gracieuse Noveret, on May 14th, 1894, from her aforesaid vendors and có-heirs, was for the sole and express purpose of acquiring so much of the title thereto as she might not then already have had, and for the express purpose of enabling her to make the aforesaid sale and donation to defendant and his first wife, Elmire Noveret.
And defendant averred that said J. Oscar Sigur signed, as a witness, the authentic act by which Mrs. Gracieuse Noveret acquired the said undivided one-third of the said plantation.
He averred that on the same day, by authentic act passed before the same notary, defendant’s first wife, Mrs. Elmire Bonvillain, for six thousand, five hundred dollars ($6,500,00) cash, paid her, then sold to Mrs. Gracieuse Noveret, her mother, a tract of land containing 82 18-100 acres, in the Oypremort prairie; that this sale was made by *1797 the said vendor in order that the said sum arising therefrom might be used, as it was used, by defendant to aid him in purchasing the aforesaid half of the said “Home Plantation,” described in plaintiff’s petition, for which sum defendant became and is now indebted unto the separate estate of his first wife.
He averred that there were three heirs of Edouard Sigur and of his wife, Mrs. Gracieuse Oornen, viz: The said Mrs. Gracieuse Noveret, wife and widow of Charles E. Noveret; Iiermogene Sigur, who died long since and whose sole heir and representative was and is the said J. Oscar Sigur; and Clara Sigur, wife of Gustave Gallery, who died and whose legal representatives were the said L. E. Gallery, Jos. E. Gallery, Charles H. Gallery, John A. Callery and Mrs. Bertha Gallery, wife of Dr. George P. Minvielle.
He averred that on said May 14th, 1894, when the said notarial acts were passed, they being so passed by the said notary at the residence of Oharles E. Noveret, in the Parish of St. Mary, all the parties herein named, as heirs of Edouard Sigur, and of his wife, Mrs. Gracieuse Comen, as well as this defendant, then and there met, and were present and there remained until all said acts, as well as the further authentic act hereinafter mentioned, were passed and signed, and that all of them, especially the said J. Oscar Sigur, took cognizance of all that is alleged as happening on that day at that place.
He averred that it was then and there stated and declared in the presence of the said J. Oscar Sigur, and of defendant, and was then and there accepted as a fact, and so acted upon by all parties mentioned, especially by defendant, that said J. Oscar Sigur had no interest remaining in, or claim or demand against, any part of the real estate once belonging to his said grand parents, and that said Sigur acquiesced therein and held out this statement to those present as the truth and fact. That it was then and there, and in the presence of the said parties, explained and declared that there being some money arising out of the partnership of Noveret & 'Sigur, of which Mrs. Edouard Sigur, widow as aforesaid, had been a partner and was when she died, a part thereof belonged to her estate and was to be divided among her heirs, and that this sum was then and there paid in equal portions to Mrs. Gracieuse Noveret, to J. Oscar Sigur and to the children of Mrs. Clara Gallery; that said J. Oscar Sigur acquiescing in the statement made before all there present that he had no interest in *1798 any of the said real estate, and that his sole interest in the estates of grand parents was only as to the cash money then remaining, accepted said sum of money; that he then made an additional claim as to certain old furniture in the residence of the Home Plantation, upon which an additional sum of one hundred and fifty dollars ($150.00) was paid him, and that these sums were all that he made any pretense to that day, and that therewith he declared himself entirely paid and satisfied.
And defendant showed that, that at the same time and place, said J. Oscar Sigur, and all said other persons named herein as co-heirs, signed another authentic act — defendant and his attorney being called to act, and signing, as witnesses to shid act — in which said T. Oscar Sigur, admitting- the payments made to him as set out, declared that he had no further claim against any of his said co-heirs on account of his being an heir as herein recited; that the sale then made by the children of Mrs. Clara Gallery, to Mrs. Gracieuse Noveret, disposed of all the real estate belonging- to the estate of Mrs! Gracieuse Oornen, wife of Edouard Sigur; and that in said act he and his coheirs acquitted each other, mutually and fully, of all demands they had against each other by reason of their being co-heirs of said Mrsi. Gracieuse Oornen, deceased, a copy of which act was annexed and made part of the answer.
That by act passed before G. B. Shepherd, notary, December 27th, 1884, said. Sigur haying inherited one-sixth of the said “Home” Plantation from his grandfather, Edouard Sigur, his grandmother, Mrs. Gracieuse Oornen, donated to him one-sixth of the same property, making him owner of the one-third thereof; and that on the same day, and by act before the same notary, he exchanged and transferred to Mrs. Gracieuse Noveret, his co-heir, said one-third of said property, thereby divesting himself of the interest in said property which he had inherited from the estate of his grandfather, which divestiture was admitted in the petition of plaintiff.
That all the written acts herein mentioned were duly recorded in the hooks of conveyance and donations in the office of the recorder of the Parish of St, Mary, as required by law.
That by the said Sigur’s conduct, silence when he should have spoken, his acquiescence and participation, and his representations at the place mentioned and in the presence.of those herein named on May 14th, 1894, when the said sale was made to defendant, and the said *1799 donation, subject to collation, was made to Ms said wife, and by Ms holding out to defendant and all others present that he had no interest as an heir or in any other manner to any part of the real estate described in plaintiffs petition, and that he had no interest as an heir or otherwise save as to the cash money that was then paid him, and for which he receipted, and declared himself fully satisfied, and as to said remnant of furniture, and by failing to object or protest against any trading in said real estate, or against this defendant investing his money therein, said Sigur was estopped to claim any part of the said real estate, and had no such claim against defendant or his wife, and could and did pass none to the plaintiff in this suit, and that none was ever intended to be passed.
That since the said Home Plantation passed to him and his wife, said Sigur has always recognized them as lawful owners, and though he has been in great poverty since then, he never, himself, made any claim such as his pretended assignee now pretended; that he had sought work on said plantation under defendant, and had always treated the present owners of said plantation as lawful owners until he signed the said pretended transfer of his rights as an heir.
And as to the order of court putting the said heirs of Mrs. Edouard Sigur in possession of her estate in July, 1895, which is alleged by the plaintiff, defendant averred that this was after the acts recited as happening- on May 14th, 1894; that her said succession had been, in fact, closed on May 14th, 1894, by acceptance by all said heirs, and that this fact was declared by said Sigur and his co-heirs by authentic act on that day; that it was later found that a certain sum of money was due the said estate by the United States for bounty on the sugar crop of 1894, being part of the money due to the firm of Noveret & Sigur; and- that it was necessary to produce to the disbursing officers of the United States a copy of a judgment of a probate court showing who were the heirs of Mrs. Edourd Sigur, who might be entitled to receive her share of the said bounty; that it was well understood by said Sigur and all others, that, while this judgment was useless under the laws of the State of Louisiana, for the purpose of any probate matter, it was required by the regulations of the said disbursing officers, and that it was nothing more than a means of collecting said bounty, and had no further meaning or relevancy.
And alleging that he acquired the undivided half of the said *1800 property in good faith, and had always possessed it in good faith, he averred that he had placed thereon useful and necessary improvements for the purpose of developing it as a sugar plantation and to manufacture and refine sugar thereon, consisting of machinery, buildings and apparatus of that kind, as well as boring wells, erecting a new residence thereon, ditching, taking in new lands, and in every manner extending and developing said plantation, which improvements were fully worth the sum of seventy-five thousand ($75,000.00) dollars; besides which he had paid the taxes on the said property since he and his wife became the owners thereof, amounting to-dollars; and that he was entitled to be reimbursed the proportionate part of the said sums in the event that a judgment was rendered against him in this matter.
Respondent prayed'that plaintiffs demand be rejected and dismissed, but in the event of a judgment in favor of the plaintiff then he have judgment against plaintiff for a proportionate amount of the sums spent by him, defendant, and that plaintiff be ordered to pay him the said amounts before he can take possession of any portion of the property.
Upon the filing of this answer, plaintiff filed an amended and supplemental petition in which, after declaring that he adopted and reiterated the allegations and prayer of the original petition, and that he had learned through the answer that there were minors interested and proper parties defendants in the suit, he prayed, without in any manner admitting that they had an interest in the property, that they should be made parties therein, and to that end he prayed that a tutor ad hoc be appointed to the minors, Sidney A., Ehnire P. and Noveret C. Bonvillain, and suggested that Philip II. Mentz would be a proper person to be appointed.
He prayed that the said appointment be made, and for citation and service of the original and supplemental petitions on said Jninors, through said tutor ad hoc, and for judgment as in his original petition.
Philip II. Mentz was accordingly appointed tutor ad hoc to the said minors, and it was ordered that he qualify by taking the oath required by law. _ He took an oath as curator ad hoc of the minors and filed an answer as tutor ad hoc, adopting as their answer the answers filed by their father for himself. . .
The District Court rendered judgment maintaining the plea of *1801 estoppel filed by the defendants, and rejected and dismissed plaintiff’s suit, and he appealed.
Opinion.
This is a petitory action for the recovery, by the plaintiff, of an undivided ninth interest in certain described real estate in the Parish of St. Mary. The action was directed, originally, against Arthur A. Bonvillain, who was alleged to be in possession of the same, but a supplemental petition was subsequently filed by which the minors, children of Bonvillain and his wife, Elmire Noveret, were made parties. Considering- them as having been properly cited, the case went to trial without objection, resulting in a judgment in favor of the defendants, from which plaintiff appealed.
Recitals in several of the acts offered in evidence are perplexing in character, particularly in the act between Mrs. Gracieuse Cornell, widow of Edouard Sigur and her grandson, J. Oscar Sigur, the vendor of the plaintiff, and in the act of exchange between Gracieuse Sigur, wife of C. E. Noveret, and the children of Clara Sigur, deceased, wife of G. Gallery.
These recitals will be referred to later. We have to take the case as we find it.
Edouard Sigur died in the Parish of St. Mary in the year 1884, leaving a surviving wife, Gracieuse Comen, as widow in community, and a number of heirs, one being J. Oscar Sigur, who was a son of Tlermogene Sigur, a predeceased son of Edouard Sigur; another, Gracieuse Sigur, wife of C. E. Noveret, and the others the children of a deceased daughter, Clara Sigur, who was the wife of Gustave Gallery.
Edouard Sigur left a very considerable estate, the greater portion consisting of the “Home” and “Richland” Plantations.
The widow, at the death of her husband, became the owner, in right of the community, of one-hcdf or three-sixths of the Home Plantation; Mrs. Gracieuse Noveret, the owner of one-third of one-half or one-sixth; the children of Clara Sigur (Mrs. Oallary), of one-third of one-half or one-sixth. J. Oscar Sigur of one-third of one-half or one-sixth.
The grandmother of J. Oscar Sigur, by act of the 27th December, 1884, before Shepherd, notary, made a donation to him of one-sixth of the Home place, free from collation.
*1802 The children of Clara Sigur (wife of Gustave Gallery), a predeceased daughter of Edouard Sigur, and wife, intervened in this act ratifying and confirming the donation so made. They were made to say that “said property should not, thereafter, be subject to any collation on the part of said donee as an heir of his said grandmother, and they each for himself fully and freely relinquished! and abandoned to the said Joseph O. Sigur, all their respective rights, claims and demands, in and to all said real estate, property hereinbefore donated by them, and each of them held and owned as heirs and legal representatives of the estate of Edouard Sigur, and recognizing and warranting and guaranteeing the title to said tract of land as complete, perfect and irrevocable.”
In the clause of the act of donation which referred to collation it was declared “this donation is made not subject to any future collation by said donee as an heir of the donor, but is donated to the said Oscar Sigur for the purposes of the settlements this day made with and among the heirs of said estate.”
The sixth donated by the grandmother of J. Oscar Sigur, to him, added to the portion inherited from his grandfather, gave him an interest of two-sixths or one-third of the property. On the same day that this donation was made to him, Gracieuse Sigur, wife of O. E. Noveret, transferred to J. Oscar Sigur, and to the children of Clara Sigur (Mrs. Callary) the one-sixth interest which she had inherited in the Richland Plantation as heir of her father Edouard Sigur, for and in consideration of the transfer to her by way of exchange of the two-sixths (one-third) held by J. Oscar Sigur on the “Home” place. What consideration was given by the Callerys to either Oscar Sigur or Mrs. Noveret for the portion of the Richland Plantation, so conveyed to them, does not appear, for they made no transfer of any kind in this act.
. The result of these transactions was to leave the Home Plantation in the widow, to the extent of two-sixths (one-third); to the Callerys to the extent of one-sixth (1-6); to Mrs. Noveret to the extent of three-sixth (1-2); (the sixth inherited from her father, plus the two-sixths received by exchange with J. Oscar Sigur).
Matters seem to have remained in this situation until the death of Mrs. Edouard Sigur, in 1894.
By her death Mrs. Noveret acquired an additional interest in the *1803 Home place to the extent of one-ninth; the Callerys an additional interest of one-ninth; and J. Oscar Sigur became de novo interested in the property to the extent of one-ninth, or stating the interest of the parties in other terms, Oscar Sigur owned two-eighteenths; the Callerys five-eighteenths, and Mrs. Noveret eleven-eighteenths (more than one-half).
On the 14th of May, 1894, the Callerys sold to their aunt, Mrs. Noveret, one undivided third or six-eighteenths of thei property, more than they really owned — by one-eighteenth.
On the same day (14th May, 1894), Mrs. Noveret sold to Arthur A. Bonvillain, the husband of her daughter, •Blmire Noveret, .an undivided half of the property, she really owning at that time an interest to that extent in the property.
Upon the same day this sale was made, Mrs. Noveret transferred to her daughter, Mrs. Elmire Bonvillain, by way of “avancement d’hoirie and donation,” subject to collation by taking less (C. C. 1251, 1253) to the amount of nineteen thousand dollars, the other undivided half of the Home Plantation.
In making these two transfers she exceeded, to the extent of one-ninth, her interest in the property. It is this interest of one-ninth which J. Oscar Sigur, claiming to be the owner thereof, transferred to the plaintiff.
Oscar Sigur denies having sold the same to the Callerys, to Mrs. Noveret, or to any one else, prior to his transfer to the ifiaintiff, and the defendants admitted very frankly, from the bar, that they were unable to show any divestiture in their favor of this ninth interest, and unless they could hold J. Oscar Sigur and the plaintiff, Brian, holding-under him, estopped from claiming it, that the plaintiff was entitled to have his right recognized and decreed.
The District Court held the plea of estoppel interposed by them to be well grounded, and it is to this feature of the case to which we now direct our attention.
The facts on which this contention rests is, first, that J. Oscar Sigur signed, as a witness, the act on the 14th of May, 1894, by which the Callerys transferred one undivided third interest in the Home Plantation.
Secondly, his being- present when the heirs of Mrs. Edouard Sigur met at the house of her daughter, Mrs. Noveret, for the purpose of *1804 settling the affairs of a planting partnership which had existed for a number of years between herself and her said daughter, and disposing, between the heirs, of a quantity of movables, furniture, etc., at which meeting an .act sous seing prive was signed (and acknowledged) by the different heirs, and among them J. Oscar Sigur, which contained recitals which would effectually bar the latter from setting up, subsequently, any interest in the property of the succession of his grandmother; and, thirdly, by being present when various acts of transfer were made, particularly that of- sale from Mrs. Noveret to Arthur Bonvillain, and that of donation by Mrs. Noveret to her daughter, Mrs. Elmire Bonvillain, and not then advancing or making known any adverse pretentions on his part.
The evidence shows that Oscar Sigur did sign, as a witness, the act of sale from the Oallerys to Mrs. Noveret, of an undivided third interest in the Home Plantation, and the record contains a copy of the act of settlement between, the heirs to which the defendants refer. The act, after reciting the names of the parties to the same, and their relationship to Mrs. Edouard Sigur, declares that they (have) had “entered into the following agreement for the purpose of settling and adjusting their interests in the estate of the said Mrs. Gracieuse Comen, deceased widow, as stated.”
“Said parties accept her succession as evidenced by the sale this day passed by the said Mrs. Bertha Minvielle and her brothers (the Gallery children), this day passed by Mrs. Gracieuse Noveret, before Charles-A. O’Neill, a notary public, in and for the parish of St. Mary.
They declare that said sale disposes of all the real property of said deceased, and whereas there was a planting partnership existing between said deceased and her daughter, Mrs. Gracieuse Noveret, which ended with the death of Mrs. Gracieuse Sigur, said deceased widow. They declare that the aforesaid sale, which embraced the growing crop on the Home Plantation, disposed, to their satisfaction, of that asset of said firm; and there being on hand the sum of-dollars, the property of said firm, said parties declare that they have received the following sums from Charles E. Noveret, who was the agent and manager of the affairs of said firm; Mrs. Gracieuse Noveret has received the sum of two thousand dollars and sixty-two 50-100 dollars; Mrs. Bertha Minvielle, L. Emile Gallery, Joseph E. Gallery, Charles Hermogene Gallery, John A. Gallery, have received the sum of *1805 two thousand, two hundred and sixty-two 50-100 dollars ($2,262.50); Joseph Oscar Sigur has received the sum of two thousand, two hundred and sixty-two 50-100 dollars ($2,262.50), which said last sums so received exhausts the cash assets of said firm; and the said parties declare that the said payments so made to them are a complete settlement of the affairs of said firm, and they exonerate said álgent, Charles E. Noveret, from any and all future demands by reason of said partnership.
“Said J. Oscar Sigur also declares that he has received from Mrs. Gracieuse Noveret the sum of one hundred and fifty dollars ($15.0.00), being in full ¿settlement of his interest in the furniture in the dwelling on the Home Plantation; and that he has now no further demands against any of of the aforesaid parties on account of his being an heir of said deceased.
“And said parties further declare that by reason of further payments made this day, which are satisfactory to them, said Mrs. Gracieuse Noveret became the sole owner of all the furniture and movables in the dwelling on said Home plantation.
“Said parties, therefore, acquit each other mutually and fully of all demands they may have against each other by reason of their being co-heirs of said deceased.”
**«•#**«•
The act was signed.
L. E. Gallery.
E. J. Gallery.
J. A. Gallery.
B. R. Minvielle.
I authorize my wife (signed) Geo. P. Minvielle. J. O. Sigur. O. H. Gallery. Gracieuse Noveret. I authorize my wife (signed)' C. E. Noveret. (This act was never re'corded.)
The evidence shows that J. Oscar Sigur was in and about the premises at the time of the execution of the different acts then passed between different parties, but not' that his attention was particularly directed to any of them.
It is claimed that Oscar Sigur slept upon his rights, but those now claimed were derived from hisl grandmother’s succession, which was only opened in 1894.
*1806 The plaintiff in the case is before the Court as a purchaser for value, who acquired the property on the faith of the public records. If his vendor at the time of the sale, actually owned the property which he conveyed, and on this record he evidently did so, and it no where appeared upon the public records that he had divested himself of- ownership of the same, plaintiff was authorized under the registry laws to purchase as he did, secure against any actions, conduct, statements en pais of his vendor, of which he had no knowledge, which might as between the vendor and certain other parties have caused him to be held estopped from thereafter claiming an interest in the property.
There is nothing to show that the plaintiff had notice or knowledge of any act either of omission or commission made by Oscar Sigur, which could have worked such an estoppel, unless the recording of the act by which the Callerys transferred a third inteitest in the Home Plantation to Mrs. Noveret, to which he had attached his name as a witness, should have conveyed legal notice to some extent to him.
We do not think the recording of that act conveyed notice for two reasons. In the first place, a person desiring to purchase property is not called upon to search the records to ascertain or to know the names of the witnesses to all the various acts in which persons other than his own proposed vendor figure as the parties, and secondly, because even if this particular act had come under plaintiff’s observation, its terms were not of such a character as to arrest his attention or place him upon inquiry.
The Callerys actually had at the time of this new transfer, undivided interests of ownership in the Home Plantation; the act of transfer declares their extent to be an undivided third; they might well have had such an interest, and this from sources entirely independent of Oscar Sigur.
The act does not declare that they held any portion of their interests from him nor is there a word to show that as a fact they did so. They were heirs of Edouard Sigur, their grandfather, and later of their grandmother, and neither the general public dealing with Oscar Sigur, nor Oscar Sigur himself acting simply as a witness, were under any obligation to examine either into the soufice or the extent of their interests. If the Callerys were claiming in their act *1807 of sale to Mrs. Noveret, to sell, or Mrs. Noveret anticipated ■ buying any interest in the Home Plantation as having at one time 'been vested in Osear Siguí, it was certainly more their duty to have so stated to Sigur at the time, than it was his to assume that they were about to deal with property with respect to which they had no right to contract, and therefore to examine into matters and prevent them.
Reviewing the situation we find that Mrs. Noveret has undertaken to dispose of the whole of the Home Plantation, first by a sale of one half to Arthur Bonvillain, and next of another half by a dation en avancement d’ftbirie subject to collation1, by taking' less to her daughter, Emire, wife of Arthur Bonvillain (now deceased) ; that in so doing she disposed to the extent of two-eighteenths of a greater interest than she really owned; one of these eighteenths having evidently been derived through the sale to her by the Callerys, who did not own the same at the time of said sale; and the other eighteenth held by her under no title whatever, so far as the record shows; that at the time of Mrs. Noveret’s sale to Arthur Bonvillain she owned a sufficient interest in the Home Plantation to have validly conveyed to him the interest she did.
In the discussion of this case, counsel of defendants urge upon us that the children of Arthur Bonvillain and his deceased wife, Gracieuse Noveret, (the other defendants in the cause) will be held to collate the property donated to their mother, in the settlement to be made of the Succession of Mrs. Noveret, between them and their aunt, Cor alie Noveret, the sister of their mother, and who is now the second wife of their father; that her liability to collate by taking less, withdrew the act between their mother and their grand mother from being a pure gratuitous donation, and made it take on the character of an onerous obligation.
They also urge before the court, that on the 14th day of May, 1884, Gracieuse Noveret sold to her mother, Mrs. Noveret, certain pro-, perty for the price of Sixty-Eive Hundred Dollars, which was declared in the act of sale to have been paid cash to the vendor, when in point of fact the price was not paid in money, but by crediting the vendor’s husband, Arthur Bonvillain, with that amount on the price due by him on his own purchase of the half of the Home Plantation from Mrs. *1808 Noveret; the husband thus becoming a debtor to his wife; Arthur Bonvillain testified that such was the fact.
The fact that Gracieuse Sigur (Mrs. Bonvillain)-, consented, on accepting title to one-half of the Home Plantation, to collate for the same by taking less, placed it in her ownership none the less by right of her inheritance (anticipated it is true) from her mother, and not under a purchase.
If, from any cause, she could be evicted from any part of the property so conveyed to her she will be relieved pro tanto in her obligation of collation.
No explanation was made before us as to what was- claimed to be the legal effect of the sale from Mrs. Bonvillain to her mother, by reason of the former not having received the price thereof, but having become the creditor of her husband for the same.
We do not see what bearing it has upon the rights and obligations of the parties to this litigation.
By consent of parties all questions as to improvements, revenues, etc., were not to be passed upon herein, but reserved for future examination and adjudication.
We have reached the conclusion that the judgment of the District Court is erroneous, and that it should be reversed, but we do not think the situation is such as to authorize us to pronounce judgment in favor of the plaintiff as matters stand.
We do not think the minors are properly before the court, as the oath taken by Philip H. Mentz, was not as Tutor ad hoc, but as Curator ad hoc. We will be obliged to remand the cause.
For reasons assigned it is hereby ordered, adjudged and decreed that the judgment appealed from be and the same is hereby annulled, avoided and reversed, and the cause is remanded to the District Court for further proceedings according to law.
Breaux, J„
having been of counsel for the Callery heirs in matter of the settlement of the Succession of Edouard Sigur, recuses himself.
Rehearing refused.