ROGERS, Justice
 

 (dissenting).
 

 My conception of the primary issue involved in this case compels me to differ from the views set forth in the majority opinion.
 

 As I see it, the issue in this case, stripped of all irrelevancies, is whether the well-recognized doctrine of equitable estoppel protects an innocent purchaser on the face of the record from the claims of the owner who participated in the sale of his realty. On this issue the facts of the case are very simple. They are as follows :
 

 On September 15, 1930, by act under private signature, Herbert J. Harvey, for a cash consideration of $700, purchased from A. N. and J. S. Simmons mineral rights and a royalty interest in a 200-acre tract of land situated in the Parish of Iberville. The act under private signature was acknowledged on September 23, 1930, and duly recorded in the conveyance records of the Parish on November 6, 1930. On May 3, 1935, A. N. and J. S. Simmons executed an act for the purpose of correcting an error in the description set forth in the instrument dated September 15, 1930. This act of correction was recorded in the conveyance records of Iberville Parish on May 9, 1935.
 

 A. N. and J. S. Simmons acquired the mineral rights and royalty interest they sold to Harvey by purchase from Dr. J. A. Richard, Jr. This sale, which was for a recited consideration of $360 cash, was. evidenced by an’ act under private signature dated June 5, 1928, and, on the same day, duly acknowledged and recorded in. the conveyance records of Iberville Parish.
 

 Dr. J. A. Richard, Jr., did not own the mineral rights and royalty interest he sold to A. N. and J. S. Simmons, but his father, Dr. J. A. Richard, Sr., did own the property. Nevertheless Dr. J. A. Richard,, Sr., acted as a witness to the act conveying the mineral rights and royalty interests to the two Simmons. He also signed, under oath, the acknowledgment attached to the instrument, deposing and saying: “that the above and foregoing document (meaning the mineral and royalty deed) was duly signed by Dr. J. A. Richard, Jr., in his (affiant’s) presence and in the presence of Miss Kate Voight, the other subscribing witness, for all the uses and purchases (purposes) therein expressed as his free and voluntary act.”
 

 On September 8, 1938, Herbert J. Harvey brought this suit to have his title vindicated and recognized against the two Richards, father and son, and the Louisiana Crusader Oil Co., Inc., the mineral lessee of the property. Harvey alleged that he acquired the mineral rights and royalty interest from A. N. and J. S. Simmons in good faith, under the belief that
 
 *114
 
 they had acquired the property under a valid title from Dr. J. A. Richard, Jr., .and it was not until the year 1937 he learned that Dr. J. Á. Richard, Sr., claimed to own the mineral rights and royalty interest conveyed by his son, Dr. J. A. Rich•ard, Jr., to the two Simmons on June 5, 1928. Harvey alleged that Dr. J. A. Richard, Sr., by joining in the deed executed 'by Dr. J. A. Richard, Jr., both as a witness thereto and as a subscriber to the •acknowledgment proving the execution of the deed, was estopped, as against plaintiff, to claim the ownership of the property.
 

 Harvey alleged that by the instrument dated June 5, 1928, Dr. J. A. Richard, Sr., and Dr. J. A. Richard, Jr., divested themselves of all their rights and interests in the property described in the deed with the same force and effect as if they had been named as vendors in the deed and that by the recordation thereof in the conveyance records of the Parish of Iberville, the alienation evidenced by the instrument became binding not only upon Dr. J. A. Richard, Sr., and Dr. J. A. Richard, Jr., but upon any and all persons -claiming by, under, or through them or •any of them.
 

 In their answers to the petition, the defendants, Dr. J. A. Richard, Sr., and Dr. J. -A. Richard, Jr., denied that when they signed the deed dated June 5, 1928, they knew they were conveying, or that they intended to convey to A. N. and J. S. Simmons the property therein described. They averred that they signed the instrument without reading it and that by reason thereof, and of other circumstances connected with its execution, their vendees, the two Simmons, did not acquire any- interest in the property described therein which they could validly convey to the plaintiff in this suit.
 

 In vindication of his title, plaintiff, as an innocent purchaser in good faith, relies upon the written instrument of June 5, 1928, and the recordation thereof in the public records of Iberville Parish as a-defense to which the two Richards, in effect, pleaded their failure to exercise the high degree of care that the transaction demanded.
 

 On the trial of the case, over plaintiff’s objection, the two Richards were permitted to testify that they signed the deed in error and to give their version of the circumstances under which the transaction was consummated. The trial judge accepted as true the explanation of these defendants and, based thereon, rejected plaintiff’s demand. The majority opinion approves the ruling of the trial judge on plaintiff’s objection to the testimony and agrees with his findings of fact. In my opinion, the ruling was erroneous. Plaintiff’s objection should have been sustained and the testimony objected to should have been excluded, relieving the court of the necessity of passing upon the facts.
 

 This is not a suit to prove title to realty by parol evidence. On the contrary, it is a suit in which plaintiff, an innocent third purchaser, relies on a writing attested and sworn to before a notary public and duly recorded in the conveyance records of the parish where the realty is situated. Nor does the plaintiff’s action fall within the
 
 *116
 
 holdings of thosé cases involving the sale of a thing belonging to another. On the contrary, this case presents a situation in which a father, in effect, has represented in writing that his son is the owner of the father’s property and has authorized him to sell the property for a valuable consideration to the named vendees.
 

 The good faith of Harvey, in purchasing the property in dispute from A. N. and J. S. Simmons for a sound price, is not and can not be questioned. Harvey can not be charged with bad faith in the transaction merely because an examination of the records would have disclosed that the title to the property, which Dr. J. A. Richard, Jr.,’ assisted by his father, conveyed to A. N. and J. S. Simmons, was not in his name but in his father’s name. Land Development Co. v. Schulz, 169 La. 1, 124 So. 125; Keller v. Summers, 192 La. 103, 187 So. 69. In these circumstances, I am unable to appreciate how the two Richards can be heard to question the validity of the sale to A. N. and J. S. Simmons so far as concerns the title of plaintiff who, as a purchaser in good faith on the face of the records, acquired the property from the two Simmons.
 

 It is stated in the majority opinion that the authorities are not in accord in respect of the question whether the knowledge of a party respecting the purport and effect of an instrument may be presumed from the sole fact of his having attested it, but that the preponderance of authority in this country is in favor of the view that the fact of a person having attested an instrument does not preclude him from asserting a right affected by its provisions, unless it is shown by independent affirmative evidence that he was cognizant, actually or constructively, of those provisions. Cited as authority for the statement are 19 Am. Jur. 787, sec. 132, and 21 C.J. 1159, sec. 162.
 

 It is also said in the majority opinion that the jurisprudence of this State is in accord with the weight of authority in the United States. Brian v. Bonvillain, 52 La.Ann. 1794, 28 So. 261; Brian v. Bonvillain, 111 La. 441, 35 So. 632; and Nelson, Curtis & Nelson v. Bridgeman, 152 La. 190, 92 So. 855, are the cases mentioned as formulating this jurisprudence. I am unable to agree with this statement.
 

 As I appreciate the jurisprudence of this State, it is in line with those decisions of the other states holding that a person who witnesses an act of sale is precluded from afterwards asserting title to the property to the prejudice of a third person purchasing oh the faith of the public records.
 

 As far back as the year 1842, the principle was announced by the Supreme Court of Louisiana that one who stands by and sees his personal property sold as belonging to another will not be permitted to set up his title in opposition to a bona fide purchaser, who bought on the faith of his declaration or apparent acquiescence. Cook v. West, 3 Rob. 331. In the following year, this Court reiterated this principle in a case involving real property. Marsh v. Smith, 5 Rob. 518. The other cases holding to the same effect are Blanchard v. Allain, 5 La.Ann. 367, 52 Am.Dec. 594; Lippmins v. McCranie, 30 La.Ann. 1251; Wimbish v. Mayer, 144 La. 865, 81 So. 373.
 

 
 *118
 
 In Wimbish v. Mayer, 144 La. at page 877, 81 So. at page 378, the principle was stated in these words:
 

 “Under our well-settled jurisprudence, where one stands by and sees his property sold under legal process, without making his claim known, or objecting thereto, he will be bound by the sale,” citing authorities.
 

 “A fortiori does that rule apply against one who, by his affirmative representations, induces another to buy property to which he afterwards asserts a claim as owner.”
 

 The writer of the article on Estoppel in 19 Am.Jur. 787, sec. 132, from which the quotation in the majority opinion was taken, refers, among other authorities, to the annotations contained in 50 A.L.R., beginning at page 671. The annotator mentions decisions from the Federal courts and from the highest courts in seventeen states, approving the rule that one who permits his property to be sold to a third person without notice, either actual or constructive, is estopped from thereafter asserting his title thereto as against such third person.
 

 Among the states are Alabama, Louisiana, Massachusetts, New York, and Pennsylvania. The Louisiana cases referred to are Marsh v. Smith, 5 Rob. 518, and Blanchard v. Allain, 5 La.Ann. 367, 52 Am. Dec. 594. The Alabama case referred to is Ashurst v. Ashurst, decided in 1898 and reported in 119 Ala. 219, 24 So. 760, 763. The Supreme Court of Alabama in that case held:
 

 “A principle of estoppel with which all others on that subject must be reconcilable, and which is applicable to all, and well sustained by the authorities, is, that, ‘where the owner or person having an interest in property, represents another as the owner, or permits him to appear as such, or as having complete authority over it, he will be es-topped to deny such ownership or authority against persons who, relying on his representations or silence, have purchased or- acquired interest in the property.’ ”
 

 In Reinach and Oteri v. New Orleans Improvement Co., Ltd., 50 La.Ann. 497, 23 So. 455, this Court, citing Bigelow on Estoppel, at page 451, expressly held that one who witnesses an act of sale is precluded from afterwards asserting title to the property against the purchaser, who accepts the conveyance in part on the faith implied by the witness’ signature.
 

 The two cases of Brian v. Bonvillain, 52 La.Ann. 1794, 28 So. 261, and Brian v. Bonvillain, 111 La. 441, 35 So. 632, are based upon the same complicated set of facts. The quotation in the majority opinion is taken from the first Brian-Bonvillain decision in the Fifty-Second La. Annual. While the opinion in that case discusses the numerous questions of estoppel raised in the case, it merely, in its decree, remanded the case to make parties. It is therefore of no value as an authority. This is clearly shown in the opinion of the Court in the second Brian-Bonvillain case reported in 111 Louisiana Report. There the Court, at page 444 of its opinion, 111 La., 35 So. at page 633, stated:
 

 “The matter before us is an original one. This court in reality decided no issue at the first hearing. It announced certain conclu
 
 *120
 
 sions of fact drawn from the evidence, the correctness of which are not disputed, but conceded, but having discovered of itself at the last moment that the minors, the real parties in interest, were not before the court, it remanded the cause to be further proceeded with. What was said at that time as to estoppel was not called for, and, for the purposes of this case, must be considered not written.”
 

 But even in the first Brian-Bonvillain case this Court stated, as shown by the syllabus, that:
 

 “A person may be estopped himself by signing as a witness an act in which third parties contract with each other with reference to rights in which he may have an interest * *
 

 As shown in the opinions in both cases, as a result of numerous acts and transactions between the children and grandchildren of Edouard Sigur and Mrs. Gracieuse Cornen, his wife, the ownership of the greater portion of what was known as the Home Place passed to their daughter, Mrs. Gracieuse Sigur Noveret. Mrs. Noveret sold her one-half interest in the Home Place to her Son-in-law, A. A. Bonvillain, and she donated the other one-half interest therein to her daughter Elmire, wife of Bonvillain. In so doing, however, Mrs. Noveret transferred an undivided one-ninth interest more than she actually owned in the property. J. Oscar Sigur, a nephew of Mrs. Noveret, acted as a witness to the act of sale in which she had acquired the interest of the children of her deceased sister, Mrs. Clara Sigur Callery, inherited by them from their grandfather, Edouard Sigur. This was one of the many grounds of estoppel pleaded against Brian who had acquired Sigur’s interest in his grandfather’s-succession on the face of the record. Im speaking of the act of Sigur in witnessing the deed from the Callerys to Mrs. Noveret,. this Court, in its opinion on the original hearing reported in 111 La. at page 456, 35 So. at page 638, stated:
 

 “The donee of Mrs. Noveret occupies the same position which she herself occupied on that subject. She stands in her shoes.
 

 “The position of Mrs. Noveret touching-the eighteenth she acquired from the Callerys: That interest she acquired for value. She was herself, however, as were her vendors, an heir of Mr. Edouard Sigur,. and must have known of the rights of Oscar Sigur in the real estate she was purchasing, and of the situation of the succession of her mother. She must have known that Sigur’s interest could only have passed out of him by means of a transfer of some kind — some writing by which he had divested himself of his rights therein. She entered into the contract of sale with the Callerys with no such writing, existing or (of course) recorded.’ The parties contented themselves with having Sigur sign the act as a witness. Whether this was accidental, or for the purpose of "working an estoppel, we do not know. Mrs. Noveret was not made a party to this suit. We do-not think the necessities -of this case call for a decision of the question of estoppel at this time from its standpoint as between Sigur and Mrs. Noveret.”
 

 In the opinion on rehearing, at page 461 of 111 La., at page 639 of 35 So., the Court,
 
 *122
 
 in discussing the question of estoppel, observed :
 

 “The question raised by the pleadings is one purely of title, with the onus on defendants to prove that the title of Sigur was divested by estoppel as alleged.
 

 “His title came from the same source as the title conveyed by Mrs. Noveret to defendants.
 

 “The decision hinges on the sole question of estoppel, and on the further question whether an estoppel not of record can affect a bona fide purchaser.
 

 “We are of opinion that there was no estoppel against J. Oscar Sigur, because the transactions of May 14, 1894, cannot be explained on any other hypothesis than ignorance on the part of Sigur, Mrs. Noveret, and the defendants as to Sigur’s interest in the Home Place. Sigur inherited one sixth interest in this plantation from his grandfather. In 1884 his grandmother donated to him an additional sixth interest, ‘not subject to any future collation,’ but for the purposes of settlement among the heirs of the estate.
 

 “Sigur subsequently conveyed his third interest thus acquired to Mrs. Noveret. On the death of his grandmother, Sigur inherited one-third of her interest in the property.
 

 “Yet, strange as it may appear, J. Oscar Sigur was ignored as an heir to the real estate belonging to the succession of his grandmother, but was recognized as an heir to the personal property.”
 

 At page 462 of the opinion on rehearing in 111 La., 35 So. at page 640, the Court further observed:
 

 “The error as to the title was common to-all the parties. The facts were known to all, and the error was one of law. Mr. and Mrs. Noveret, their daughter, and son-in-law assumed that J. Oscar Sigur did not own any interest in the Home Place. They were not deceived or misled by any act or declaration on the part of Sigur. It was. their own mistake.”
 

 It will thus appear that the litigation between Brian and Bonvillain arose from a series of transactions among the members-of the same family. The one-ninth interest of J. Oscar Sigur in the Home Place,, which he transferred to Brian; was acquired by him as an heir of his grandmother who died subsequent to the date of the execution of the sale by the Callerysof their interest in the Home Place to Mrs. Noveret, which was the deed Sigur witnessed.
 

 In Nelson, Curtis & Nelson v. Bridgeman, 152 La. 190, 92 So. 855, 860, which is-also referred to in the majority opinion, the principal point at issue was whether a deputy clerk of court was authorized to-correct a recorded deed without the permission of the interested parties. At the very end of the opinion, the Court referred to a plea of estoppel urged against one of the defendants who signed, as a witness, two-mineral leases covering, among other lands, the land in dispute. The Court stated that since the defendant did not know or realize that the lease in part included
 
 *124
 
 the land in which he had an interest, he was not estopped. The only reference to any authority for the proposition is made in these words: “See, on this subject, Corpus Juris, vol. 21, p. 1159, par. 162.” It does not appear from the opinion whether the leases were entered into prior or subsequent to the alienation of the- property in dispute. Nor does it appear that the plea of estoppel was interposed by the lessee to any adverse claim asserted by the witness to the instruments.
 

 In my opinion, this case falls squarely within the principle of estoppel as laid down in the Wimbish, Reinach, and other cases to which we have referred. The case is not one in which Dr. J. A. Richard, Sr., merely stood by and saw his property sold by Dr. J. A. Richards, Jr., to A. N. and J. S. Simmons. It is one in which he affirmatively represented that his son, the vendor of the two Simmons, was the real owner of the property. This is so, not only because he signed the deed as a witness to its execution, but also .because of his solemn declaration, attached to and made part of the instrument, in order to make prima facie proof of its execution and so that it might be recorded to affect third persons. Act No. 68 of 1914; Civil Code, article 2253.
 

 In his affidavit attached to the deed, Dr. J. A. Richard, Sr., swore that the instrument was signed by his son, Dr. J. A. Richard, Jr., in his (affiant’s) presence and in the presence of the other subscribing witness, “for all the uses and purchases (meaning purposes) therein expressed *
 
 *
 
 The purpose and use for which the instrument was executed was to evidence the sale of the property therein described for the consideration therein expressed by Dr. J. A. Richard, Jr., as owner to A. N. and J. S. Simmons. -On the affidavit of Dr. J. A. Richard, Sr., the execution of the instrument was proved and spread upon the public records. So far as innocent third persons are concerned, both Dr. J. A. Richard, Sr., and Dr. J. A. Richard, Jr., are presumed to know the contents ■ of the instrument which they signed.
 

 If the two Richards, as they claim, signed the instrument without reading it, they were guilty of culpable negligence for which they, and not the plaintiff, must suffer the consequence.
 

 “Although an intention to influence the conduct of another is ordinarily essential to the creation of an equitable estoppel, it has been held in many cases that estoppel may arise, even in the absence of any intention of this character, from the culpable negligence of one party by which another has been misled.” 19 Am.Jur. 694, sec. 66. “One who is able to read a written instrument which is presented to him and has an opportunity to do so is ordinarily estopped from denying that he knew of the contents thereof and is bound thereby, if he negligently signs, accepts or acts upon it without actually reading it.” 19 Am.Jur. 702, sec. 71.
 

 It is a great principle of equity that if one of two innocent persons must suffer, he shall suffer who, by his conduct, has rendered the injury possible.
 

 If it be conceded that Dr. J. A. Richard, Sr., in joining in the execution of the deed
 
 *126
 
 by Dr. J. A. Richard, Jr., to A. N. and J. S. Simmons was not cognizant of the fact that the property conveyed was his property and not that of his son, it is difficult for me to understand how his culpable negligence in failing to observe that fact can be imputed to the plaintiff, an innocent purchaser on the face of the public records.
 

 For the foregoing reasons, I respectfully dissent from.the views expressed in the ma-j ority opinion.