OVERTON, J.
Plaintiffs, Emma Garrett, widow of William Garrett, deceased; the ehildren and grandchildren of William Garrett ; Dr. J. A. Shaw; and various oil companies — have instituted this suit against defendants, who are the heirs of Thornton Bridgeman and his wife, Mrs. • Ory Bridge-man, to have recognized as valid a purported correction, said to have been made at the instance of Mrs. Ory Bridgeman, and some of her children, with the knowledge and consent of the others, by a deputy clerk of court, on the face of the conveyance records in his custody. This correction amended a deed, by including property in it, not included when the deed was, originally executed and recorded. In the event the correction should not be recognized, then plaintiffs ask that two deeds, passed at different times, one of which was executed by Thornton Bridgeman to William Garrett, the other by the widow and heirs of Bridgeman to the same vendee, be corrected and reformed, so as to include the land described in the correction made by the deputy clerk of court. Emma Garrett and her children and grandchildren claim the ownership of the land, included by the deputy clerk in the correction made by him, and Shaw and the oil companies own or possess interests in oil and gas leases on this land, and hence their interest as plaintiffs in this suit.
The Bridgeman heirs deny that the deputy clerk was authorized to make the correction, and deny jhat there was any intention of conveying to Garrett the land included by that official in the correction made by him.
It appears that on January 12, 1889, Thornton Bridgeman, father of some of the defendants, and grandfather of the remaining ones, sold to William Garrett the S. W. % of the S. W. % of section 17 and all that part of the S. E. % of S. E. % of section 18 lying north of the Sykes Ferry road, and all that part of the S. W. *4 of S. E. % of section 18 lying north of the Sykes Ferry road and east of the Eldorado road, all in township 21 north, range 7 west, containing 76 acres, more or less.
Thereafter, on November. 7, 1903, Mrs. Ory Bridgeman, widow of Thornton Bridgeman,. and her children, executed a deed to William Garrett, conveying to him the N. W. % of the S. J3. % and the S. W. % of the S. E. %, except the portion thereof owned by the vendee at the time, situated in section 18, township 21 north, range 7 west, containing 80 acres, more or less.
It is on this latter deed that the deputy clerk made the correction, above mentioned. He did so by writing above the N. W. %, in small letters, the following: “N. This made the deed read, “the N. % of the S. 'E. and therefore made it convey to William Garrett the N. E. % of the S. E. 14 of the section, in addition to the land originally conveyed to him by it. The deputy clerk then, in order to show his authority for making the correction, wrote on the face of the deed, the following: “Corrected by request of parties in interest Garrett and Bridgeman. Meh. 14, ’06.” This notation was not signed by any of the parties interested, nor by the official making the correction.
When Fortson, the deputy clerk of court, was asked under what authority he made the above correction, he testified that Garrett, and, if he recalled correctly, Mrs. Bridgeman and T. C. Bridgeman, went to his office and requested him to make it. Later, during the course of his evidence, he stated *195 positively that Mrs. Bridgeman was present. Dolan, who was interested in putting in satisfactory form the title claimed by the Garretts, testified that he spoke to T. C. and S. J. Bridgeman relative to the correction that had been made, and requested an affidavit from them showing the facts surrounding its making, and that they stated in the conversation that ensued that they knew that some correction had been made, but thought that it affected land further south in the section. Fortson corroborates this statement to the extent that they replied that they thought the correction affected other lands, without mentioning the section, but both S. J. and T. O. Bridgeman contradict positively the evidence that such statements were made by them.
T. C. Bridgeman is very positive that no authority was given to Fortson to make the correction, and, further, that he was not present when it was made, and knew nothing of it until shortly prior to the institution of this suit. The evidence of five of the remaining defendants is that the correction was not authorized by them, and there is no evidence tending to show that any of them authorized it, other than that already stated.
There is evidence in the record showing that Mrs. Bridgeman was not even present in the state on March 14, 1906, the date of the correction, but was in Arkansas at the bedside of a sick daughter. Plaintiffs have sought to show that she was present on that date by producing a deed by private act, executed by her, conveying property, not involved in this suit, to her son, G. L. Bridge-man. They contend that this deed was executed on the day the correction was made, from which they draw the inference that she was at home on that day, and not in Arkansas. Its execution was proven on that day before Fortson, as deputy clerk of court, by the affidavit of the vendee; but the deed, itself, does not give the month in which it was signed. The method of proof adopted indicates that Mrs. Bridgeman was not present at the clerk’s office when the deed was proved. This is further indicated by the fact that in order to adopt that method, it was necessary to write the affidavit on the back of it, although there was a printed form for acknowledgment, by the vendor, at the bottom. Under the circumstances, we do not think that the deed has any appreciable .tendency to prove that Mrs. Bridgeman was not in Arkansas on the date of the correction.
The parol evidence offered to show the correction — and it constitutes all that was offered for that purpose — does not appear to have been objected to on the ground that it was inadmissible, and we have therefore. considered it. We are, however, of the opinion that it is insufficient. A clerk of court or his deputy is not authorized to correct a deed, and the public records in his custody, in any such manner. If parties desire to make a correction, a correction deed should be prepared and, after its execution, should be recorded in the conveyance records. The correction then would be properly made. The method adopted made it necessary to prove the correction by parol evidence, and such evidence is inadmissible for that purpose, when objection is made to it. As it is, we are unable to say that the evidence shows that the correction was authorized. No presumption arises that it was, from the fact that it was made by a public officer on a- record in his custody, since it was not only made several years after the deed was recorded, but in addition, in a manner not authorized by law, but rather contrary to its provisions.
Plaintiffs also ask, as we have stated, that the deeds from Thornton Bridgeman, and from his widow and children, be reformed and corrected so as to include the land that they contend was unintentionally omitted from them. Their contention is that Thornton Bridgeman intended to convey to Garrett, by his deed of January 12, 1889, in ad *197 dition to the land therein conveyed, all of that portion of the N. E. Vi oí the S. E. Yi of section 18 that lies south and east of the Minden and Eldorado road, consisting of 12.-83 acres, but contrary to his intentions and those of Garrett, the deed failed to include it and in fact conveyed nothing in the N. E. Vi of the S. E. Vi of the section; and that it was the intention of Mrs. Bridgeman and her children, by their deed of November 7, 1903, to convey to Garrett, and that it was Garrett’s intention to purchase, not only the land described in that deed, but also all of that part of the N. E. Vi of the S. E. Vi of section 18 that lies north and west of the Minden and Eldorado road. That part contains 19.67 acres.
The following rough sketch will perhaps serve somewhat to make clearer the contentions of the parties litigant:

The lines running parallel with the base show that part of the land described in the deed from Thornton Bridgeman to Garrett, situated in section 18. The vertical lines north of those just mentioned show the land that plaintiffs contend was unintentionally omitted from the deed by Thornton Bridge-man to Garrett. That part of the sketch marked (x) shows the land conveyed by the deed to Garrett executed by Mrs. Bridgeman and her children; and that part marked with dots shows the land that plaintiffs contend Mrs. Bridgeman and her children unintentionally omitted in executing it. The dotted and vertical lines also show the land that the deputy clerk, by the" correction he made, included in the deed executed by Mrs. Bridge-man and her children.
Plaintiffs contend that, if there should be added to the land conveyed in the deed executed by Thornton Bridgeman the 12.33 acres, ip the N. E. Vi of the S. E. Vi, lying south and east of the Eldorado road, this would make the exact number of acres called for by the deed. They also contend that, if there should be added to the land conveyed by Mrs. Bridgeman and her children the 19.67 acres lying north and west of the Eldorado road, in the N. E. % of the S. E. Vi, the sum would be the number of acres called for by that deed. In each instance, should that be done, such practically would be the result, though it would cause a trifling excess.
However, the mere fact that the shortage may be corrected in each of the deeds, by including therein, in the manner above stated, the portions of land mentioned, does not justify the inclusion of them, without clear proof that it was, in each instance, the intention of the contracting parties that those portions should be included, otherwise specific portions of land not intended to be conveyed might be included. Moreover, it. does not follow, because there is error in the quantity of land described in the deeds, that the error is due to the failure to include in them property intended to be transferred. The error may be due, not to such failure, but to a misstatement of the acreage contained in the tracts described. In this event, it is manifest that there would be no justification for the court to reform the deeds *199 by including in them additional prbperty. Whatever right, if any, the purchaser then would have would be to sue for a diminution of the price, and not for a reformation of the deed.
However, plaintiffs do not rely upon the above circumstance, alone, but rely on it chiefly in connection with the asserted fact that following the execution of each of the two deeds, Garrett took possession of the land that they contend was omitted from each, and. maintained that possession without protest from the vendors for years. If this should be well established, and if it should appear that possession was thus taken or maintained by Garrett under circumstances justifying the conclusion that the vendors knew that Garrett had taken possession, not merely of the land described in the deeds, but also of that now in contest, and without any objection on their part until about the time of the institution of this suit, the force of plaintiffs’ position would at once become obvious.
However, an examination of the evidence as to Garrett’s possession, and as to the knowledge of the vendors, as to its actual extent, in reference to the property described in the deeds, weakens considerably the force of plaintiffs’ contention.
In respect to the deed executed by Thornton Bridgeman, it appears, as near as we are able to fix the time, that Garrett took actual possession, under it, some time during the winter of 1890 and 1891. He cultivated, during the year 1891, an old field, on a part of the land described in the deed. In taking possession, his first act, however, was to build'a home. This, he built, not on the land described in the deed, but fronting on the Eldorado road, on the 12.33 acres, which plaintiffs contend were intended to be included in it. He built it about 260 feet from the north line of the property described in the deed. Near it, he fenced a small plot for a garden, and another for a lot. These were the improvements during the first year of his occupancy.
It is true that the above was a taking of actual possession of a part of the land in dispute, sufficient for a house and yard, a garden, and a lot; including, at best, probably not oyer three acres, though we seriously question whether it amounted to that. The question, however, presents itself whether the taking of possession of even that much was sufficient to attract Thornton Bridge-man’s attention by causing him to realize that Garrett had located on the 12.33 acres in dispute, so that it might be said that he yielded possession of it to Garrett under the deed given by him. As bearing on that question, it may be said that Garrett’s widow states that the house was located where it was at the suggestion .of Thornton Bridge-man. Her evidence on that point is not supported by that of any other witness, and it is evidence as to the statement of a man who was dead at the time of the trial, and therefore there was no way of contradicting it. In view of that fact, and in view of the further fact that the title to real estate is here involved, we do not think that her evidence on that point is sufficient to establish that the house was located where it was at Thornton Bridgeman’s suggestion. Thornton Bridgeman died in April, 1921, only a few months after Garrett took .possession, and during those few months he went about but little, if at all. It is therefore unlikely that he 'knew what Garrett was doing. Granting, however, that it is established that Thornton Bridgeman did suggest to Garrett to build his home where he did, still it does not follow that he realized that the spot was on the 12.33 acres in question. It was nqt so far distant from the northern line of the property, described in the deed, that he could not have been misled; nor is there anything in the record that would enable us to say, *201 with any degree, of satisfaction, that he had a correct idea of where that line was.
After Thornton Bridgeman’s death, as near as we are able to fix the date, Garrett, from time to time, cleared a large portion of that part of the land in contest, which plaintiffs assert was intended to be included in Bridge-man’s deed, of the pine saplings that grew there. There is also evidence to the effect that he had a part of it under fence for a while as a pasture, and also that he built on it a log house for a tenant, near his own home. There is qlso evidence to the effect that later he had a part of it, amounting in all to some three or four acres, in close proximity to the house, in cultivation. However, it does not appear that Mrs. Bridgeman or her children realized that Garrett had taken possession of any part of the N. E. % of the S. E. %• In so far as the evidence discloses, the inference is that they did not so realize, and in fact did not know that they owned it, though thought that there was a sixteenth of a section, in that vicinity, belonging to them, of which they had lost trace.
In so far as relates to possession of the 19.67 acres, lying north and west of the Eldorado road, which plaintiffs declare were unintentionally omitted from the -deed executed by Mrs. Bridgeman and her children, the evidence is vague and unsatisfactory. At best, it can only be said that a part of it was cleared of the pine saplings that grew there. The evidence leaves it uncertain as to whether any part of it was fenced or cultivated, nor does it justify the conclusion that Mrs. Bridgeman and her children yielded possession of it to Garrett under the deed which they executed, or recognized any right in him to take possession of it under that deed or otherwise.
Unless the evidence justifies- the conclusion that possession was taken with the consent of the vendor, and with knowledge of what property possession was taken, that fact loses its ‘force as a circumstance tending to show that the property of which the vendee possessed himself was intended by both contracting parties to be included in the deed.
It should be said also that in so far as relates to the deed from Thornton Bridgeman, the defendants know nothing of the property intended to be conveyed, except what the deed itself shows. However, in respect to that from Mrs. Bridgeman and her children, T. O. Bridgeman testified that he acted for the remaining defendants in negotiating the sale, and that it was their intention to sell, and Garrett’s to purchase, only the property described in that deed. It should also be observed that section 18 is a small section; that is to say, it does not contain the usual number of acres. It does not appear whether that fact was known to Thornton Bridge-man at the time of his sale to Garrett, though there is some evidence tending to show that Garrett did not know of it until some years later. Had the section, however, been of the usual size, nevertheless, in so far as relates to the Thornton Bridgeman deed, there still would have been a shortage of approximately 5% acres. However, had the section been a full one, which it seems the defendants thought, that fact would have made the land 'described in the deed from Mrs. Bridgeman and her children approach practically as near the acreage recited in the deed as would the adding to the actual acreage contained in the tract described in the deed, the 19.67 acres in dispute in the N. E. % of the S. E. 34. In the former instance there would be a shortage of 2 acres approximately, whereas, in the latter there would be an excess of 1.87 acres, approximately.
We therefore conclude that our Brother of the lower court was correct in holding, in effect, that the evidence was insufficient to warrant a reformation of the deed in the manner proposed. The evidence *203 leaves serious doubt as to whether there was an intention to convey the land in contest. In the sale of real property, a strong presumption obtains that the deed, as executed, properly describes and conveys all of the land intended to be conveyed. While the law recognizes that error may creep in, and that land may be omitted that it was the intention to transfer, and in proper instances will grant relief, yet the evidence, to justify the granting of it, must be clear and convincing, and not leave the matter to grave doubt, or make it merely probable that land was erroneously omitted. Ker v. Evershed, 41 La.Ann. 15, 6 South. 566. The fact that the deputy clerk made the correction on the face of his records, above considered, adds nothing towards proving plaintiffs’ case in this respect, since it does not appear that he acted with authority.
Plaintiffs also plead as a muniment of title the prescription of 30 years, provided by article 3499 of the Civil Code. This suit was filed on August 20. 1920. It does not appear when citation was . rved, but defendants answered on September 9, 1920. Hence prescription was interrupted at least on that date.
The weight of the evidence shows that possession was not taken of any part of the land in contest until the winter of 1890 and 1891. Hence 30 years did not elapse between the taking of possession and the interruption of prescription. Therefore the plea of prescription of 30 years must be overruled.
Plaintiffs also plead, in support of their title, the prescription of ten years’ acquirendi causa. In order to maintain that prescription, a deed sufficient on its face to transfer title is among the essentials. C. C. art. 3479. It is clear that plaintiffs have no such deed, nor any at all, to the land in contest. Therefore, that plea must be overruled.
Plaintiffs have also pleaded that T. C. and S. J. Bridgeman are estopped to question plaintiffs’ title, the first, because he signed, as a witness, two leases which included among other lands, the land in question, 'and was paid to get some of the Garretts to sign them, and that the latter is es-topped because he held in escrow one of the leases, pending an examination into the title. It appears, however, that neither T. C. Bridgeman nor his brother knew or realized that the lease, .in part, included land in which they had an interest. Under such circumstances, we do not think it can be said, that they are estopped. The lack of such knowledge on their part makes the plea inap-, plicable. See, on this subject, Corpus Juris, vol. 21, p. 1159, par. 162.
Plaintiffs have also pleaded that defendants are estopped from questioning their title, because Mrs. Bridgeman warranted it to the land in contest, and that, as they accepted her succession unconditionally, they are bound by her wárranty. This plea, however, is manifestly based upon the assumption- that Mrs. Bzddgeman authorized the deputy clerk to make the correction on the face of the deed above considered, since she did nothing else, in respect to the land in contest, from which it possibly could be contended that any obligation of warranty arose. However, as we have found that the evidence fails to show that she authorized the correction, this plea must be overruled, as it has no basis upon which to rest.
Binding no error in the judgment appealed from, it is hereby affirmed; appellants to pay the costs.