This is a petitory action which was met by a plea of prescription of ten and thirty years on the part of the defendants. The plea was referred to the merits after which the defendants filed their answer setting out title in themselves and again urging their pleas.
In his petition, the plaintiff alleges that he is the true and lawful owner of a tract of land described as being "six acres of land in the village of Angie, in the Joseph Ard Headright No. 52, Township 1, South, Range 14 East, said tract of land being 3 acres fronting NOGN Railroad and two acres deep, lying south of Vine Street."
He alleges that he acquired the property from Mrs. Maude K. McRae and other parties, on January 17, 1944, by a title which is of record in the Conveyance Records of the Parish of Washington. He then avers that Mrs. Rebecca Lott Ford, widow of Liberty W. Ford, and Iris Ford Tilton, Ralph Ford, Tom Ford and Robert Earl Ford, surviving children of Liberty W. Ford, are in the actual possession of the tract of land without any title whatsoever thereto and without any right to remain on the same; that they refuse, without any good or legal cause, to deliver possession of the property to him. He accordingly prays that a curator ad hoc be appointed to represent those of the Ford children who are absentees and for service of citation and that after due proceedings he be recognized as owner of the property and as such entitled to the full and undisturbed possession thereof.
In a supplemental petition, plaintiff made it to appear, as it really is, that he was not claiming that the defendants were in possession of the entire tract of land but only of a small portion in the southern part which he more fully described as follows: "Beginning at the southeast corner of your petitioner's six-acre tract of land, thence north along the easterly border of the said six-acre tract, a distance of 92 feet; thence *Page 302 
west at an angle of 75° to the said easterly border of the said six-acre tract, a distance of 340 feet; thence south, eight feet; thence east along the south border of your petitioner's six-acre tract of land a distance of 325 feet more or less to the point of beginning." He annexed a sketch with a shaded part showing the area which he claims the defendants were in possession of. It is irregular in form and appears to be in the shape of a trapezoid.
In their answer the defendants admit that they are and have been in possession of the property involved, under fence and unmolested, and with good and valid title which they set out in detail and which is duly recorded in the Conveyance Records of the Parish.
It appears that the land in dispute is made up of portions of three separate tracts of land acquired at different times, some of the deeds running back for a period of more than thirty years and others more than ten years and defendants accordingly plead the prescriptions acquirandi causa of ten and thirty years.
The lower court sustained the defendants in their contentions holding that they had a good and legal title to all the land involved in the suit and sustained the pleas of prescription which they had urged. The judgment decreed that they were the owners of the property and plaintiff took this appeal.
It developed from the evidence that all the land now belonging to the plaintiff and to the defendants came from a common owner who was Mrs. C.C. McMillan and, as stated by the district judge, it appears that it was because she had sold some of the small tracts of land from which the property in dispute comes and those sales were not taken into consideration when the remainder of the tract was sold to parties from whom plaintiff deraigns his title that the discrepancy occurred and if that is so then the plaintiff who has to rely ultimately on the title coming from the common author, has to be satisfied with less than what his sale calls for.
The first sale that was made by Mrs. McMillan out of the Headright in Section 52 was of one acre in the southeastern corner, on July 28, 1906. This sale was to T.L. and T.F. Ford and the property conveyed was described as being "one acre of land in the Joseph Ard Headright No. 52 and bound E. by R.R. Street, S. by Nicholas Headright line, W. N. by vendor." It is comparatively easy to identify that acre by the boundaries given on the east and on the south. Part of the land in dispute in this suit comprises one quarter of that acre which it appears was transferred in several deeds by one party to another until finally it was acquired by the father of the defendants, Liberty W. Ford from C.R. Pope on February 25, 1930. The whole of that acre which had been originally bought by T.L. and T.F. Ford had also been sold and conveyed on different occasions until it became the property of one E.H. Hood who on December 30, 1913, sold three quarters of it to Arthur Shay, author in title of Liberty W. Ford, reserving the one quarter of an acre in the northeast corner and the same being described as being bounded north and south by Mrs. Daisy Keeton, east by Railroad Street and west by Arthur Shay. It is important to note that in that sale the property conveyed is referred to as being that known as the Ford Ford Mill Property. This it would seem helped to identify its location which is further substantiated by the testimony of several witnesses who referred to the fact that at one time there was a sawmill there and also a cotton gin.
With regard to that one quarter acre which comprises the easternmost part of the land in dispute we think therefore that the defendants have traced their title to it through C.R. Pope, a title which extends as far back as February 19, 1930. As to how they showed possession of that particular tract we will discuss later along with their claim of possession to the remainder of the property in controversy.
The other portion of the land in dispute comprises the northern part of that area which is situated immediately west of the acre sold by Mrs. McMillan in 1906 to T.L. T.F. Ford. From the titles exhibited by the defendants it is shown that on May 8, 1907 she sold to Arthur Shay one acre of land in the Village of Angie in the *Page 303 
Joe Ard Headright No. 52 bounded north and west by C.C. McMillan, east by Ford's Mill and west by Headright 52. We do not quite understand the western boundary given by Headright 52 in this sale because apparently the property sold isin Head-right 52. Unless therefore it was meant that the southern boundary was the southern line of Headright 52 it would seem that there is a little discrepancy there. However with the other boundaries given it strikes us that the property is correctly identified as being that acre which is directly west of the T.L. T.F. Ford property since the eastern boundary is given as Ford's Mill and it is reasonably certain that it was on that acre of land that the Fords did have their mill. Besides, at that time Mrs. McMillan still was the owner of the remainder of the property to the north which is given as that boundary and, we believe, was also the owner of the property on the west and from which she appears to have sold the acre described in a sale to Arthur Shay on January 23, 1908, since in that sale that acre is described as being bounded east by vendee (Shay) and south by the dividing line between Head-right 52 and 54.
The sales which we have referred to, comprise among them, all of the property which is in dispute in this suit.
The plaintiff's title on the other hand dates back only to the year 1944 and whilst it calls for six acres of land, measuring three acres along the railroad by two acres deep, south of what is referred to as Vine Street, it is apparent, as appears from the survey made by T.E. Pigott in 1944, that in order to give the plaintiff the six acres called for by his title, he would have to overlap on the south portion thereof, some 92 feet on the east side along the railroad right of way, and about 8 feet on the west side, thus creating the area in the form of the trapezoid which comprises the very land that is in dispute in the suit.
These titles may be said to be a bit complicated and could be a bit clearer; still, they seem to be sufficient to support the pleas of prescription which have been urged by virtue of the possession claimed by these defendants through their father, Liberty W. Ford, and his author in title, Arthur Shay.
The evidences of possession consist of fences around the property. Shay who had acquired some ten acres of land consisting of adjoining tracts sold all that he owned to Liberty W. Ford on November 13, 1920. Part of the ten acres extended west of a road situated west of the property that is in dispute. It was on this part of the property that Shay had his home which was continued to be used as such by L.W. Ford after he acquired the property. After his acquisition Ford fenced in all of the property and ran his fence on the north end up to the quarter of acre which he did not acquire until 1930 from C.R. Polk. After he acquired this quarter of acre in 1930 he extended his fence on a straight line and ran it as far as the eastern end of the property up to the railroad property. Besides, the evidence shows that he cultivated some portions of the property. He clearly evidenced an intention of possessing the whole. We think therefore that his possession of all the land in dispute with the exception of the one quarter acre has been proven as far back as November, 1920 which is but a few years short of the thirty years. However if we add to his possession that of his author in title, Shay, it certainly extends far beyond the thirty year period.
[1, 2] The principal contention of counsel for plaintiff seems to be that the defendants cannot defend their thirty year plea of prescription which, it is maintained, is the only ground on which they could obtain title to the property, because in order to make up the entire period it is necessary for them to tack on to theirs and their father's possession, that of his author in title, Shay, and this, they say, they cannot do. Counsel cite certain authorities which did hold that the claimant under the thirty year plea could not add to his possession that of his vendor but that was because there was no privity of contract shown between him and his vendor with respect to the possession claimed. See particularly Sibley v. Pierson, 125 La. 478, 51 So. 502. In reviewing the law on this point the court, in Emmer v. Rector, 175 La. 82, *Page 304 143 So. 11, referred to the case of Harang v. Golden Ranch Land 
Drainage Co., 143 La. 982, 79 So. 768, 769 and stated that on rehearing it had approved the principle enunciated in Sibley v. Pierson to the effect that unless there was a privity between the possessor and his authors in title, the latter's possession could not be tacked on that of the former to make the thirty year period, but that the court had "impliedly, if not expressly, approved the converse of the proposition; namely, that, where there was a privity of contract between the possessor and his vendor, the possession of the latter could be tacked on to the possession of the former to make out the statutory period." [175 La. 82, 143 So. 14.] The court pointed out that in the Harang case it had also approved the definition of the word "privity" as used in this connection which is given in 1 R.C.L. at page 178 as follows; "Between Whom Privity Exists. — Privity denotes merely a succession of relationship to the same thing, whether created by deed or by other act, or by operation of law. If one, by agreement, surrenders his possession to another, and the acts of the parties are such that the two possessions actually connect, the latter commencing at or before the time the former ends, leaving no interval for the constructive possession of the true owner to intervene, such two possessions are blended into one, and the limitation period upon the right of such owner to reclaim the land is thereby continued; indeed, the purpose of a continuous possession is the continuous ouster of the owner." See also 1 American jurisprudence p. 880.
[3] In this case all of the elements of the sort of privity defined existed between the parties holding possession of the greater part of the property for more than thirty years and even though it be conceded, for the sake of the argument, that the defendants have to depend on their plea of thirty years prescription with regard to that part of the property which is situated west of the quarter acre tract, the site of the old mill property, we hold that they have successfully sustained that plea.
With regard to the plea as it concerns the quarter acre tract referred to, we are of the opinion that the defendants' title to that part seems to be clearer than their title to the remainder of the property that is in dispute and it impresses us as being definitely a title that is translative of property. The testimony further convinces us that when L.W. Ford acquired that portion of the land from C.R. Pope, in 1930, he straightened out his fence and ran it as far as the railroad property which was the eastern boundary, thus including that tract also in his possession. That was more than sixteen years before this suit as filed and makes the plea of ten years prescription with a title translative of property good.
We believe that the judgment of the district court correctly disposed of all the issues presented in the case and for the reasons herein stated it stands affirmed at the costs of the plaintiff, appellant herein. *Page 321