ELLIS, Judge.
This is a suit for $3,659.61 filed by the plaintiff brothers against the Bank of Ab-beville & Trust Company and its president, F. W. Kerksieck, under an agreement of contract of dation en paiement which was executed by the plaintiffs in favor of the bank. The main question involved in the Lower Court, as well as in this court, was whether parol evidence was admissible to explain, vary, add to or contradict the authentic agreement between the parties.
The Lower Court permitted parol evidence and dismissed the plaintiff’s suit and they have appealed.
The history of this suit shows that the plaintiffs were engaged in farming, and being in need of financial assistance borrowed money from the bank on the 11th day of January 1951, and as a result gave the bank a note and mortgage for $75,000. The pertinent portions of this mortgage are as follows:
“ * * * Personally came and appeared Elry Griffin, husband of Mary Lou Greene, and the said Mary Lou Greene: Henry Griffin, husband of Jeanne Viator, and the said Jeanne Viator, all residents of Vermilion Parish, Louisiana, hereinafter called Borrower (whether one or more) who declared that Borrower is engaged in vultivating for the purpose of making thereon crops of rice and other agricultural -products for and during the current crop year, the property and lands hereinafter described, situated in the Parish of St. Mary, State of Louisiana, to-wit:
“That certain part of Riverside Plantation belonging to Wallace J. Pugh, containing 800 acres, and being bounded North and East by the Atacha-falaya River, South by Wallace J. Pugh and West by Six Mile Lake.
“Pledgors giving one-fifth of the crop on the above tract as land rental.
“The Borrower, being in need of funds for the cultivation and making the crops on said land during the current crop year, has applied to Bank of Abbeville & Trust Company hereinafter called the Creditor, for advances in money as required, from time to time, for the production of said crops, up to the total sum of Seventy-Five Thousand and No/100 ($75,000.00) Dollars; and the Borrower, to represent said advances, has executed one promissory note of even date herewith described as follows; in the sum of $75,000.00, falling due on November 1, 1951, all drawn by the Borrower to the order of the Creditor, and bearing interest at the rate of six per cent per annum from date until paid * * *.
“ * * * the Borrower does specifically pledge and pawn all of said agricultural crops, either planted and growing or in contemplation of being planted and grown, as well as the proceeds thereof, unto and in favor of the Creditor and any future holder or holders of any or all of said notes, and does hereby mortgage in favor of the Creditor and any future holder or holders of any or all of said notes, the following described movable property
On July 23, 1951, plaintiffs executed another crop lien pledge and chattel mortgage identical with the above described mortgage except that by error which is obvious on the face of the document it states “Pledgors giving one-fifty of the crop on the above tract as land rental.” There is no question raised and it is clear that this should have been %th of the crop.
The plaintiffs, being unable to meet their obligations, entered into negotiations with the bank which resulted in an agreement to cancel all obligations of the plaintiff to the bank upon the former releasing all property described in the chattel mortgages and crop liens which had been given by plaintiffs as security for their indebted *233 ness. The pertinent part of this dation en paiement reads as follows:
. “Whereas, party of the first part holds the following chattel mortgages and crop liens and the note accordingly secured thereby, viz.:
“1. Chattel mortgage and crop lien dated January 11th, 1951, from Elry Griffin and Henry Griffin and their wives in favor of the Bank of Abbe-ville & Trust Company, for the sum of $75,000.00, recorded in Volume 14-A at Page 1695, under Entry No. 118429, of the chattel mortgage records of Vermilion Parish, Louisiana.
“2. Chattel Mortgage and Crop lien dated July 23rd, 1951, from Elry Griffin and Henry Griffin and their wives in favor of the Bank of Abbeville & Trust Company, for the sum of $6,000.00 recorded in Volume 14-A at Page 2619, under Entry No. 121524, of the Chattel Mortgage Records of Vermilion Parish, Louisiana.
“3. Chattel Mortgage dated October 6th, 1951, from Henry Griffin and Elry Griffin in favor of the Kaplan Farm Equipment Co., recorded in Volume 19, at page 337, under Entry No. 122634, of the Chattel Mortgage Records of Vermilion Parish, Louisiana, which chattel mortgage is in the sum of $4,000.00.
“That all of said crop liens and chat-tie mortgages are likewise of record appropriately in the Parish of St. Mary, Louisiana.
“That the notes, crop liens and chattel mortgages represented under items one, two and three above, have been used as collateral and secured those certain two promissory notes, the first dated January 18th, 1951, in the sum of $75,000.00 bearing interest at the rate of six per cent from maturity, made due and payable November 1st, 1951, executed by Henry Griffin and Elry Griffin in favor of the Bank of Abbeville & Trust Company, and upon which obligation there is an approximate balance due of $49,200.00 with six per cent, interest from November 1st, 1951, and the second note in the sum of $21,100.00 dated December 12th, 1951, due thirty days after date, bearing interest at the rate of six per cent from maturity until paid, with a credit thereon of $4,816.38 paid on March 18th, 1952, said note being executed by Henry Griffin and Elry Griffin in favor of the.Bank of Abbeville & Trust Company.
“Parties of the second part in order to satisfy in full, cancel and erase said obligations agree hereby to turn over to party of the first part wherever situated and authorized fully that taking thereof by party of the first part all items described in said mortgages in full title and ownership to party of first part, the particular items presently existing and being here dealt with, being fully described as follows, to-wit: * * *
“ * * * Four-Fifths of approximately 1,200 barrels of Rexore rice in the Vermillion Farmers Co-Operative Warehouse at Abbeville, Louisiana, which has been sold and is presently being delivered to American Rice Mill.
“Four-fifths of the proceeds of this rice belongs to and is to be turned over to the party of the first part.
“ * * * In consideration whereof at the end of said thirty days party of first part hereby agrees to deliver the notes and papers representing said obligations to parties of second part thereby declaring fully satisfied, extinguished, canceled and released all said obligations existing between said parties as well as any other obligations which may be owed to it by parties of second part, all in full satisfaction, accord, transaction and settlement between the parties.”
The District Court found and there is no' doubt but that the plaintiffs had pledged to the bank all of the rice grown on the Riverside Plantation belonging to Wallace J. Pugh except %th of the crop which was *234 to be paid to the said Pugh as rental on the land. The entire crop of approximately 1,537 sacks had been stored in the Vermilion Farmers Cooperative Warehouse at Abbeville, Louisiana. However, on the date of the execution of the dation en paiement or shortly prior thereto, during the negotiations leading up to the agreement, the bank called Vermilion Farmers Cooperative Warehouse in order to find out the amount of rice which the plaintiffs had stored there, in order to place said amount in the written agreement. They were told that the amount there was twelve hundred and some odd sacks and, therefore, inserted in the written agreement “approximately 1,200 barrels.” The plaintiffs failed to tell the bank that they had already removed Yqth of the rice and given it to the land owner, Pugh, for rental.
The Lower Court gave a detailed discussion of the testimony in his written reasons and we thoroughly agree that there is no doubt but that the defendant bank was entitled to the entire proceeds of the approximately 1,200 barrels of rice remaining in the Vermilion Farmers Cooperative Warehouse on the date the agreement was entered into, but in order for the mistake to be corrected and plaintiffs denied judgment it is necessary that parol evidence be admissible.
Counsel for plaintiffs contends that the Trial Jtidge committed reversible error in permitting parol evidence to contradict, vary and add to the recitals of an authentic act, in the absence of any allegation of:
(a) Contrary recitals in a counter letter.
(b) Contrary evidence through the agency of interrogatories on facts and articles.
(c) Allegation of fraud or error.
In the case of Locascio v. First State Bank & Trust Co. of Hammond, 168 La. 723, 123 So. 304, 305, our Supreme Court stated:
“There is no allegation in the pleadings of fraud or error. The defendant signed the act of sale voluntarily and went into possession of the property on the faith of that deed.
“ ‘The authentic act is full proof of the agreement contained in it, against the contracting parties and their heirs or assigns, unless it be declared and proved a forgery.’ R.C.C. art. 2236 (2233).
“ ‘Neither shall parol evidence be admitted against or beyond what is contained in the acts, nor on what may have been said before, or at the time of making them, or since.’ R.C.C. art. 2276(2256).
“The foregoing articles of the Civil Code have been uniformly and strictly applied by this court in cases too numerous to mention here. The recently decided cases are Harris v. Chrichton [Crichton], 158 La. [358], 359, 104 So. 114; Glover v. Abney, 160 La. 175, 106 So. 735; Plaza Amusement Co. v. [Frank] Rubenstein & Co., 163 La. [272], 282, 111 So. 702.
“It is the unbroken rule that authentic sales cannot be attacked,' except by means of a counter letter, or by interrogatories on facts and articles, or by allegation and proof of fraud or error.”
In the case of Holloway Gravel Company v. McKowen, 200 La. 917, 9 So.2d 228, at page 232, the Supreme Court stated:
“It is elementary that in the execution of deeds and like instruments the intention of the parties must be gathered from an inspection of the instruments without the aid of extrinsic evidence, but if the instrument is so ambiguous as to leave the mind in doubt as to what the parties intended, extrinsic evidence may be resorted to as an aid in its construction. Hudson & Collins v. McGuire, 188 Ky. 712, 223 S.W. 1101, 17 A.L.R. 148.
“The rule that the intent of the parties governs the scope of the contract is set forth in Article 1959 of the Civil Code in these words: ‘However general be the terms in which a contract is *235 couched, it extends only to the things concerning which it appears that the parties intended to contract.’ ”
In the case of Reynaud v. Bullock, 195 La. 86, 196 So. 29, upon rehearing at page 34, the Supreme Court stated:
“It is an established rule of law in our jurisprudence that ‘Either party is always permitted, in a suit between the parties to a contract, to correct any error in the instrument purporting to evidence the contract, so as to' make it express truly and correctly the intention of the parties.’ (State v. Standard Oil Company of Louisiana, 164 La. 334, 354, 113 So. 867, the cases therein cited, and Fair v. Williams, 187 La. 953, 175 So. 631) provided the rights of third parties have not intervened. Sentell v. Randolph, 52 La. Ann. 52, 26 So. 797; Adams v. Drews, 110 La. 456, 34 So. 602; Bender v. Chew, 129 La. 849, 56 So. 1023; Fran-tom v. Nelson, 142 La. 850, 77 So. 767; Giovanovich v. Breda’s Widow and Heirs, 149 La. 402, 89 So. 251; Waller v. Colvin, 151 La. 765, 92 So. 328; 12 American Jurisprudence 631, Section 138; Williston on Contracts, Revised Edition, Volume 5, Section 1585, page 4423; 23 Ruling Case Law 333, Sections 25 and 27; 53 Corpus Juris 908, 935, 936 and 962. The error or mistake must be mutual. Hello World Broadcasting Corp. v. International Broadcasting Corp., 186 La. 589, 173 So. 115; Crowell and Spencer Lumber Co. v. Hawkins, 189 La. 18, 179 So. 21; Topps v. North British & Mercantile Ins. Co., La.App., 148 So. 470; 13 Corpus Juris 373, Section 254; 13 Corpus Juris 520, Section 481; 53 Corpus Juris 941, .Sections 59 and 60; 23 Ruling Case Law 327, Section 20; 12 American Jurisprudence 624, 625, Section 133; and Article 1826, Revised Civil Code. The burden is on the one seeking the reformation to prove the error (Metcalfe v. Green, 140 La. 950, 74 So. 261; White v. Myane, 10 La. App. 195, 120 So. 650; Crais v. Castaing, 13 La.App. 395, 128 So. 300; Coussons v. Smythe, La.App., 178 So. 657), and he must carry the burden by clear, and the strongest possible, proof. Palangue v. Guesnon, 15 La. 311;, Dickson v. Dickson, 36 La.Ann. 870; Ker v. Evershed, 41 La.Ann. 15, 6 So-566; Bryan v. Wisner, 44 La.Ann-832, 11 So. 290; Gladdish v. Godchaux, 46 La.Ann. 1571, 16 So. 451; Chaffe v. Minden Lumber Co., 118 La. 753, 43 So. 397; Waller v. Colvin, 151 La. 765, 92 So. 328; and Nelson, Curtis & Nelson v. Bridgeman, 152 La. 190, 92 So. 855.
“It was held in the case of Nelson, Curtis & Nelson v. Bridgeman, 152 La. 190, 92 So. 855, 860, that: '* *i a strong presumption obtains that the deed, as executed, properly describes and conveys all of the land intended to be conveyed. * *• * the evidence [of an omission or error] * * * must be clear and convincing * (Brackets ours.)”
Summing up the law and jurisprudence, it is clear that as between the parties if the act “is so ambiguous as to leave the mind in doubt as to what the parties intended, extrinsic evidence may be resorted to as an aid in its construction,” or it may be varied by parol upon an allegation of error or fraud.
An examination of the dation en paiement in question in this case reveals that by general terms the plaintiffs intended to convey to the Bank all property covered by the chattel mortgages enumerated therein, and then the instrument states:
“Parties of the second part in order to satisfy in full, cancel and erase said obligations agree hereby to turn over to party of the first part wherever situated and aitthorized fully that taking thereof by party of the first part all items described in said mortgages in full title and ownership to party of first part, the particular items presently existing and being here dealt with, *236 being fully described as follows to-wit:
* * >{c * * *
“Four-fifths of approximately 1200 barrels of Rexora rice in the Vermilion Farmers Co-Operative Warehouse at Abbeville,. Louisiana, which has been sold and is presently being delivered to American Rice Mill.
“Four-fifths of the proceeds of this rice belongs to and is to be turned over to the party of the first part.”
The defendants contend that the agreement is ambiguous on its face as it clearly stated that all items covered in the chattel mortgages were to'be given to the Bank and then an examination of the chattel mortgage would show that all of the rice raised on the Pugh Plantation except %th was mortgaged to the Bank, and also that “approximately 1200 barrels” is ambiguous and subject to specific proof. We cannot agree with this contention as the general statement must yield to the specific description “ * * * the particular items presently existing and being here dealt with, being* fully described as follows, to-wit: * * *” On the face of the dation en paiement the rice in question is definitely fixed and limited to the Rexora 'rice in the Vermilion Farmers Cooperative Warehouse at Abbeville, La., “which has been sold and is presently being delivered to American Rice Mill.” On the face of the agreement there is no doubt as to what ‘rice the plaintiffs agreed to give to the defendant, therefore, parol evidence was not admissible on the theory that the contract was so ambiguous “as to leave the mind in doubt as to what the parties intended.”
It is next necessary that we examine the defendant’s answer to see whether error has been in' fact pleaded. We find the following allegations of fact:
“IL The allegations of Paragraph Two ; of. plaintiffs’ petition are admitted... Defendants further expressly aver that ■ plaintiffs agreed to transfer and deliver to the defendant Bank their entire interest in all property on which the Bank had any lien, mortgage or other pledge including specifically four-fifths of all of the rice produced on the property belonging to Wallace Pugh.
“III. The allegations of Paragraph Three of plaintiffs’ petition are admitted. , And further answering defendants expressly aver that plaintiffs agreed to transfer and deliver and defendant Bank agreed to accept among other items enumerated, four-fifths of all of the rice produced by plaintiffs on the property of Wallace Pugh, which four-fifths represented the entire share belonging to plaintiffs and the other one-fifth represented the landowner’s share in said crop.
“IV. In answer to the allegations of ■ Paragraph Four of plaintiffs’ petition, defendants admit that four-fifths of the Rexora rice crop produced on the property of Wallace Pugh was sold for ■ the sum of Nine Thousand Nine Hundred Seventy Three and 07/ioo ($9,973.-07) Dollars, of which amount the sum of One Thousand Eight Hundred Fifty-five and 87/ioo ($1,855.87) Dollars was retained by Vermilion Farmers ’ Co-Operative Association, Inc., -for its charges, leaving a net of Eight Thousand One Hundred Seventeen and 2%oo ($8,117.20) Dollars, which amount was turned over to the Bank of Abbe-ville & Trust Company at the request of F. W. Kerksieck, President, pursuant to the agreement which had been made by the said Bank and the plaintiffs herein. All allegations of Paragraph Four in conflict with or inconsistent with the above are denied and all other allegations whatsoever contained in Paragraph Four are denied.
“V. In answer to the allegations of Paragraph Five of plaintiffs’ petition, defendants admit that Elry Griffin came to the Bank in Abbeville and asked F. W. Kerksieck, the President, to pay to him one-fifth of the proceeds of the said Rexora rice, .which was refused because of the fact that plain *237 tiffs had no interest in said proceeds, it having been specifically understood that the entire interest of the said plaintiffs was transferred and delivered to the said Bank. All other allegations of Paragraph Five are denied.
******
“XIII. That at the time of the execution of the agreement of dation en paiement hereinabove referred to, it was specifically understood by and between the parties thereto and the plaintiffs knew that they were delivering to the said Bank their entire four-fifths interest in all Rexora rice which had been produced on the property belonging to Wallace Pugh and that the one-fifth interest not transferred constituted the land owner’s share of said rice in which the plaintiffs had no interest.
“XIV. That the said plaintiffs offered for sale and did sell, subject to the terms and provisions of the crop lien and chattel in favor of the Bank of Abbeville & Trust Company, their share of the Rexora rice through the Vermilion Farmers Co-operative Association, Inc., on March 10, 1952, which consisted of four-fifths of the production of said Rexora rice and which was stored in the Vermilion Farmers Co-Operative Association warehouse and same was being delivered before the execution of the said dation en paiement contract, and the exact amount of the said rice could not be determined as it was then in process of being weighed by the Edmondson-Duhe Rice Mill of Rayne, Louisiana, as per their contract and agreement of purchase. The figure of ‘1200 barrels’ was an approximate figure and did not enter into a determining factor as set forth for the division of said crop of Rexora Rice produced by plaintiffs on the land of the said Wallace Pugh.
“XV. That defendant Bank received the proceeds of said rice pursuant to the agreement which had been made between the parties and as part of the consideration paid to the said Bank for the cancellation of the indebtedness hereinabove referred to.”
The facts as pleaded by the defendants set forth the complete intention of the parties insofar as the property which was to have been transferred to the defendants in the dation en paiement. It clearly states and sets forth that the Bank was to receive ^ths of the Rexora rice crop produced on the property of Wallace Pugh, and that, accordingly, the plaintiffs sold, subject to the terms and provisions of the crop lien and chattel mortgage in favor of the defendant Bank, their share of the Rexora rice through the Vermilion Farmers Cooperative Warehouse on March 10, 1952, which consisted of %ths of the rice produced on the Pugh plantation which was stored in the Vermilion Farmers Cooperative Warehouse, and that the rice was being delivered before the execution of the dation en paiement contract and the exact amount of said rice could not be determined as it was then in the process of being weighed at Rayne, Louisiana, and that the figure of “1200 barrels” was an approximate one.
It is not necessary that the defendant have specifically alleged a legal conclusion of error but it is sufficient if they allege facts which clearly put at issue the error in the dation en paiement contract. This they have done by a complete recital of the material facts surrounding the execution of the dation en paiement contract, and parol evidence was therefore admissible to show the error, viz., that the 1,200 barrels was an approximate figure and the true intent of the parties was to transfer %ths of the entire crop produced on the Pugh plantation as shown by the chattel mortgages and crop lien which was introduced and admissible as written evidence.
As previously stated, the District Court correctly found and gave a detailed discussion of the evidence supporting its finding that the defendant Bank was entitled to the entire proceeds of this 1,237 sacks of *238 Rexora rice which constituted %ths of the crop produced by plaintiffs on the Pugh Plantation, stored in the Vermilion Farmers Cooperative Warehouse, and therefore was entitled to the entire proceeds of the sale of such rice.
For the above and foregoing reasons the judgment of the District Court dismissing plaintiffs’ suit is affirmed.