116 So.2d 114 (1959)
Orie HADWIN, Jr., Plaintiff-Appellee,
v.
Dorothy SLEDGE et al., Defendants-Appellants.
No. 9051.
Court of Appeal of Louisiana, Second Circuit.
November 25, 1959.
*115 Louis Lyons, Bossier City, for appellants.
Goff & Caskey, Arcadia, for appellee.
AYRES, Judge.
This is a petitory action by which plaintiff seeks to be recognized and decreed the owner of an undivided 1/96th interest in and to the NW ¼, Section 26, T. 14 N., R. 8 W., Louisiana meridian, Bienville Parish, Louisiana, containing 160 acres more or less.
The real defendant is Dorothy Wimberly Sledge, with whom plaintiff joined her husband as a party defendant. From a judgment in favor of plaintiff, as prayed for, the above-named defendant prosecutes this appeal.
Each of the parties litigant claims under deraignment of title from a common ancestor. The record establishes that pursuant to an enactment of the Congress of the United States of America, known as the Swamp Land Grant Act, 43 U.S.C.A. §§ 982-984 the aforesaid property was conveyed to the State of Louisiana; that by patent of March 12, 1861, this property was conveyed to John A. Bridger; that Bridger, by conveyance of January 2, 1877, sold the property to Joseph Hadwin; that, after Hadwin's death, his succession was administered and, by an administrator's deed, this and other property were sold and conveyed July 29, 1896, to Martha Hadwin, surviving widow of the decedent; that Martha Hadwin died intestate about the year 1898, leaving, as her sole and only heirs, 12 children, issue of her marriage with the said Joseph Hadwin; that one of these children was Dan Hadwin, who died likewise intestate about the year 1927, leaving, as his sole and only heirs, seven children and a grandson, Orie Hadwin, Jr., plaintiff herein, whose father's death preceded that of his grandfather.
To plaintiff's action, defendant filed and urged various pleas, including a plea of estoppel and pleas of 10 and 30 years' prescription acquirendi causa. On trial of these exceptions, they were overruled, following which defendant answered denying generally plaintiff's allegations, except admitting her possession, and prayed that plaintiff's demands be rejected and his suit dismissed.
Defendant deraigns the title from the succession of Joseph Hadwin through a tax sale of the aforesaid property, together with other lands, as per a deed dated June 27, 1898, predicated upon the delinquency and nonpayment of taxes due thereon, wherein said property was sold to L. M. Pullin, who, on August 28, 1899, after expiration of the period for redemption, sold the property to Margarett Hadwin, Fannie Hadwin, Annie Hadwin, and Kate Hadwin for a recited consideration of $37.50, calculated as the amount of taxes paid by Pullin August 7, 1911.
Annie Hadwin Brown and Fannie Hadwin Outler sold their interest in the property to one C. J. Mitchell, whose wife was Kate Hadwin, and, on December 30, 1919, Margarett Hadwin sold her interest, also, to Mitchell. March 19, 1942, C. J. Mitchell, Jr., as the sole and only heir of C. J. Mitchell, Sr., and Fannie Hadwin Mitchell, both of whom died in 1940, sold this property to Laurie Sledge, who, on October 8, 1943, conveyed the same to C. H. Sledge, who, on October 11, 1943, sold the same to the defendant, Dorothy Wimberly Sledge, with a recital in the deed that the property was purchased with the vendee's separate and paraphernal funds under her separate administration and management, and the *116 property purchased would constitute her separate and paraphernal property.
This appeal presents primarily for determination the correctness vel non of the action of the lower court in overruling defendant's plea of estoppel and pleas of prescription of 10 and 30 years. These will be discussed in the order stated.
The plea of estoppel is predicated upon the fact that plaintiff's grandfather, Dan Hadwin, from whom plaintiff claims to have inherited his interest in this property, witnessed deeds on two occasions, that is, on August 28, 1899, wherein L. M. Pullin sold the foregoing property to Margarett, Fannie, Annie, and Kate Hadwin and, on August 7, 1911, wherein Annie Hadwin Brown and Fannie Hadwin Outler sold their interests to C. J. Mitchell, and which deeds constitute links in defendant's chain of title.
The fact that one attests an instrument such as the above does not preclude him from asserting a right affected by the instrument's provisions, unless it is shown by independent affirmative evidence that he was cognizant, either actually or construtively, of those provisions. Such is the holding by the majority opinion of the Supreme Court in Harvey v. Richard, 200 La. 97, 7 So.2d 674, 676, in the course of which the court stated:
"`The authorities are not agreed in respect to the question whether the knowledge of a party respecting the purport and effect of an instrument may be presumed from the sole fact of his having attested it. Some of the earlier English cases and a few American jurisdictions have taken the position that such knowledge may be presumed from the sole fact of attestation. The earlier English doctrine was subsequently disapproved by Lord Chancellor Thurlow. Moreover, the preponderance of authority, so far as the American cases are concerned, is distinctly in favor of the view that the fact of a person having attested an instrument does not preclude him from asserting a right affected by its provisions, unless it is shown by independent affirmative evidence that he was cognizant, actually or constructively, of those provisions.' 19 Am.Jur. 787, Section 132. See, also, 21 C.J. 1159, Section 162.
"The Louisiana jurisprudence is in accordance with the weight of authority in the United States. See Brian v. Bonvillain, 52 La.Ann. 1794, 28 So. 261; Brian v. Bonvillain, 111 La. 441, 35 So. 632; and Nelson, Curtis & Nelson v. Bridgeman, 152 La. 190, 92 So. 855.
"In the first case the court held, as expressed in its syllabus, that the recording of an act in which third parties contracted with each other with reference to the rights in which an attesting witness might have an interest `does not per se convey constructive knowledge to the general public of any personal interest of the witnesses in the recitals of the act and its subjectmatter.' In the latter case (152 La. 190, 92 So. 856), the court held that `Signing leases from defendants as witnesses, assisting in obtaining such leases, or holding one of them in escrow pending an examination into the title, did not estop plaintiffs to assert title to part of the land, where they did not know or realize that the leases included land in which they had an interest.' (From the syllabus.) (All italics ours.)"
There was no proof whatsoever offered to establish that when Dan Hadwin signed the aforesaid deeds he had any knowledge that the descriptions therein contained descriptions of property of his or in which he had an interest; nor is there any evidence that defendant's ancestors in title were in any manner misled or induced to act to their prejudice by any of the acts of the aforesaid Dan Hadwin. Therefore, the plea of estoppel was, in our opinion, properly and correctly overruled.
*117 Next in logical order for consideration is defendant's plea of 10 years' prescription acquirendi causa under L.S.A.-C.C. Art. 3478 et seq. The aforesaid article recites that
"He who acquires an immovable in good faith and by just title prescribes for it in ten years. * * *"
and, under Article 3479, four conditions must concur in order to acquire the ownership of immovables under this species of prescription:
(1) Good faith on the part of the possessor;
(2) A title translative of property;
(3) Possession during the time required by law; and
(4) An object which may be acquired by prescription.
No issue is raised or contention made as to the sufficiency of defendant's deed as one translative of property, nor as to the character and adequacy of her possession or for the required period of time, nor that the ownership of the property was susceptible of acquisition by prescription. Therefore, the only issue presented by this plea is as to the good faith of defendant.
"Good faith is always presumed in matters of prescription; and he who alleges bad faith in the possessor, must prove it." L.S.A.-C.C. Art. 3481.
Therefore, the party alleging or relying upon bad faith in the possessor of property who claims a title by prescription must prove the bad faith. Wells v. Wells, 30 La.Ann. 935; Land Development Co. of Louisiana, Limited v. Schulz, 169 La. 1, 124 So. 125; Coleman v. Pollock, 191 La. 813, 186 So. 346; Dupuy v. Joly, 197 La. 19, 200 So. 806; Boyet v. Brushwood Methodist Church, La.App., 98 So.2d 593.
"The possessor in good faith is he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact; as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another." L.S.A.-C.C. Art. 3451.
The possessor in bad faith is thus defined:
"The possessor in bad faith is he who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective." L. S.A.-C.C. Art. 3452.
A preliminary question therefore arises as to whether or not plaintiff has sustained, as against this defendant, Dorothy Wimberly Sledge, that she was not in good faith in purchasing and possessing the property, an interest in the title of which is involved. There is not a scintilla of evidence in the record that impugns Mrs. Sledge's good faith.
Knowledge of certain facts was attempted to be shown in Laurie Sledge for the purpose of establishing his lack of good faith. It is contended that where one has knowledge of facts rendering a sale of property invalid at the time of his acquisition, he is not a bona fide possessor. Fradella v. Pumilia, 177 La. 47, 147 So. 496. However, there was no showing that the facts relied upon ever came to the attention of the defendant, Dorothy Wimberly Sledge, who had been in possession of the property as owner since October 11, 1943, presumably in good faith, until this action was instituted July 16, 1957. The showing made is wholly and entirely insufficient to establish bad faith upon her part, even had the proof offered been sufficient as against Laurie Sledge to establish his bad faith, of which we are not even convinced.
Nevertheless, it is urged that, by the testimony of one James R. Quarles, who occupied the property as a tenant of defendant, in which he related a purported conversation with Laurie Sledge concerning a possibility of his purchase of the property, *118 it was shown Sledge stated he could not sell the property because he could not convey a good title. That he made such a statement was denied by Sledge. There was no preponderance of evidence on the point.
A further contention is made that Laurie Sledge knew, when making the purchase from C. J. Mitchell, Jr., that he was purchasing only such interest as Mitchell owned, implying that Sledge knew he was only purchasing an interest in and not the whole of the property. The record does not support this contention. From the testimony as a whole, no doubt is raised as to Sledge's intention to purchase the entire 160 acres. His knowledge that his vendor's title was through inheritance as the sole and only heir of his father and mother does not constitute proof to the contrary. Nor does the testimony of C. J. Mitchell, Jr., taken by deposition in plaintiff's behalf, support plaintiff's position on this point. In answer to the interrogatory, "When this transaction was made, state whether or not you informed Laurie Sledge of the situation with respect to the title of this property." Mitchell's reply was, "Yes, we discussed the title to the lands and I believed then that I owned the entire interest." To the next interrogatory, "What did you tell him about the title to this land?"Mitchell, in his answer, stated: "I did not make any direct statements as to the interest which I owned in the land as I was unskilled in matters of law and felt that my father and mother had owned the land and, since I was their only heir, I owned it and had a right to make a deed to it."
Nor does the record support plaintiff's contention that Laurie Sledge was acquainted with the Joseph Hadwin family. Sledge testified that he was not acquainted with them and that when he bought the land he did not know who had formerly owned it. Sledge's position on this point is supported by indisputable facts. Joseph Hadwin died not later than 1896 and his widow, not later than 1898. Laurie Sledge was 47 years of age at the time of the trial of this case in 1958, hence he must have been born in 1911. Before he reached manhood, the events relied upon occurring in the preceding century may be properly characterized as somewhat ancient. Under these circumstances, we cannot presume Laurie Sledge, merely because he later lived in a small community, near the community where the Joseph Hadwin family formerly lived, possessed knowledge of the family when purchasing this property that should have put him on inquiry as to the possibility of defects in the title thereto or the possibility of other heirs having an interest therein, when the result of such presumption would destroy the presumption of good faith created under the provisions of the Civil Code in matters of prescription. L.S.A.-C.C. Arts. 3478, 3481; Harrill v. Pitts, 194 La. 123, 193 So. 562.
The facts in the case just cited were more favorable to plaintiff's viewpoint than the facts in the instant case, but insufficient to sustain the position taken. The court held that, as respects the right to plead prescription in a petitory action, knowledge of vendee's transferee that vendor, "N. E. Drake" and "Mrs. N. E. Drake" were one and the same did not place transferee in bad faith when purchasing from vendee for failure to investigate vendor's marital status, particularly where vendee had been in possession of property for 22 years. Nor was he charged with notice of error in the description of the land contained in the deed to the vendee because he, the transferee of the vendee, was a notary who took acknowledgment of the vendee when the vendee purchased the property.
Plaintiff further complains that Laurie Sledge made an insufficient examination of the title. Wherefore, it is contended that had he made a thorough examination, he would have discovered the tax sale and its "redemption," which is the conveyance, referred to heretofore, made by L. M. Pullin to the four Hadwins. This, it is urged, should have placed Sledge on notice of the possibility of other heirs to *119 this property. The record discloses these facts which an examination and investigation of title and ownership would have probably established: that the four Hadwins lived upon and occupied this property until two of them made a sale to C. J. Mitchell in 1911, following which Mitchell went into possession of the property, after which, in 1919, he acquired another interest whereby he and his wife, the fourth of the vendees of Pullin, became record owners of the tract in its entirety. Mitchell and his wife continued to reside upon this property until their death in 1940. Their occupancy was as owners. They farmed and tilled the soil, sold timber thereon in 1923, 1925, and 1926. In 1930, they executed a crop lien in order to secure funds for provisions and supplies to enable them to cultivate the agricultural portion of the property during that year. In 1937, they executed an oil, gas and mineral lease covering the entire tract. There is nothing in these facts from which it could be concluded that Sledge was a bad-faith possessor under his purchase of 1942. It can therefore be only concluded that plaintiff has failed to sustain his burden of proof to overcome the presumption of good faith which, on the contrary, appears to have been adequately established.
It may be appropriate here to point out that, as in the case of the defendant, Dorothy Wimberly Sledge, there have been no charges of bad faith directed to her vendor, C. H. Sledge. Nor is the deed from C. H. Sledge to defendants assailed in any manner.
The plea of 10 years' prescription acquirendi causa, for the aforesaid reasons, is, in our opinion, well-founded and should have been sustained.
Lastly, for consideration, is defendant's plea of 30-year prescription acquirendi causa under L.S.A.-C.C. Art. 3499, which provides that
"The ownership of immovables is prescribed for by thirty years without any need of title or possession in good faith."
The facts upon which this plea is predicated have been heretofore detailed. Meriting consideration is the question of tacking onto defendant's possession that of her predecessors in title, particularly that of C. J. Mitchell and his wife, and that of their son succeeding them.
The principle of law involved is that when prescription is pleaded and adverse possession is in different persons, it must be shown that a privity existed between them, and when a privity of estate or contract between the occupants is shown the successive possessions may be joined or combined in a computation of the 30 years required by the statute. The Supreme Court, in Emmer v. Rector, 175 La. 82, 143 So. 11, 14, in commenting upon the opinions in Sibley v. Pierson, 125 La. 478, 51 So. 502; Harang v. Golden Ranch Land & Drainage Co., 143 La. 982, 79 So. 768, stated:
"The court, in its opinion on rehearing, approved the principle enunciated in Sibley v. Pierson, that, unless there was a privity between the possessor and his authors in title, the possession of the latter could not be tacked on to the possession of the former in order to make up the prescriptive period of 30 years. And the court impliedly, if not expressly, approved the converse of the proposition; namely, that, where there was a privity of contract between the possessor and his vendor, the possession of the latter could be tacked on to the possession of the former to make out the statutory period. The court, at page 1019 of 143 La., 79 So. 768, 780, quoted approvingly from I.R. C.L. p. 717, as follows, viz.:

"`Between Whom Privity Exists. Privity denotes merely a succession of relationships to the same thing, whether created by deeds, or by other act, or by operation of law. If one by agreement *120 surrenders his possession to another, and the acts of the parties are such that the two possessions actually connect, the latter commencing at or before the former ends, leaving no interval for the constructive possession of the true owner to intervene, such two possessions are blended into one, and the limitation period upon the right of such owner to reclaim the land is thereby continued; indeed that purpose of continuous possession is the continuous ouster of the owner.'
"Article 3475 of the Civil Code provides that: `Immovables are prescribed for by 30 years without any title on the part of the possessor, or whether he be in good faith or not.' See to the same effect article 3499 of the Civil Code.
"Under these codal articles actual possession by a party and his authors in title for more than 30 years gives the possessor title by prescription. Evasovich v. Cognevich, 159 La. 1035, 106 So. 556; Johnson v. Congregation Daughters of the Cross, 162 La. 657, 110 So. 894."
See, also, Thurmon v. Hogg, 225 La. 263, 72 So.2d 500; Sattler v. Pellichino, La.App., 71 So.2d 689, 695-697; Ford v. Ford, La. App., 34 So.2d 301. In Hill v. Richey, 221 La. 402, 59 So.2d 434, 440, this observation was made:
"We recognize also that under the jurisprudence a person claiming by possession alone and without title is required to show an adverse possession by enclosures, and that his claim will not extend beyond such enclosures. But, when this jurisprudence is considered with the articles of the Code announcing the law applicable to such cases, we do not think a strict interpretation should be given to the word `enclosures'."
Cited in support of the above pronouncement was L.S.A.-C.C. Art. 3437, providing:
"It is not necessary, however, that a person wishing to take possession of an estate should pass over every part of it; it is sufficient if he enters on and occupies a part of the land, provided it be with the intention of possessing all that is included within the boundaries."
The court followed the interpretation of the word "boundaries," as used in the aforesaid article, given in Leader Realty Co. v. Taylor, 147 La. 256, 265, 84 So. 648, 651, wherein it was stated,
"The word `boundaries,' in that article, means the limits or marks of inclosures if the possession be without title, or the boundaries or limits stated in the title deed if the possession be under a title. That is made plain by article 3498 which declares that'When a person has a title and possession conformably to it, he is presumed to possess according to the title and to the full extent of its limits.'" (Emphasis supplied.)
See, also, Sattler v. Pellichino, supra.
"Privity" between person in possession and predecessor for purpose of tacking period of possession denotes merely a succession of relationship to the same thing, whether created by deed or by other act, or by operation of law. Ford v. Ford, La. App., 34 So.2d 301; American Jurisprudence, Vol. 1, page 880, "Adverse Possession," § 153.
Privity has therefore been established between defendant in possession and her predecessors entitling her to tack onto her possession that of her predecessors in computation of the time necessary and required to support her plea of 30 years' prescription acquirendi causa. The period of such possession has been shown to extend over a period of time greatly in excess of the required period of time. Therefore, this plea is, in our opinion, likewise valid and should have been sustained.
*121 For the reasons hereinabove assigned, the judgment appealed is annulled, avoided, reversed and set aside; and it is now ordered, adjudged and decreed that defendant's pleas of 10 and 30 years' prescription acquirendi causa be and the same are hereby sustained and that, accordingly, the defendant, Mrs. Dorothy Wimberly Sledge, be and she is hereby decreed the owner of the following-described property, to wit:
Northwest quarter (NW ¼), Section 26, Township 14 north, Range 8 west, Louisiana meridian, containing 160 acres more or less, situated in Bienville Parish, Louisiana.
It is further ordered, adjudged and decreed that plaintiff-appellee pay all costs, including the cost of this appeal.
Reversed and rendered.